IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 15-CIV-24115-MOORE/McALILEY

TIMOTHY THOMPSON,

      Plaintiff,

v.

CARNIVAL CORPORATION; DELISLE WALWYN
& CO. LTD.; VACATION AND TOUR CONSULTANTS
(ST. KITTS) LTD. d/b/a KANTOURS a/k/a KANTOURS
DESTINATION SERVICES; and XYZ CORPORATION(S),

      Defendants.
_____/

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT, CARNIVAL CORPORATION'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

The Plaintiff, TIMOTHY THOMPSON, by and through undersigned counsel and pursuant to Federal Rules of Civil Procedure, hereby responds in opposition to Defendant, CARNIVAL CORPORATION'S ("Carnival['s]") Motion to Dismiss Plaintiff's Complaint [D.E. 19] and, in furtherance thereof, relies on the following memorandum of law:

### I. Introduction

The instant matter arises out of an incident that occurred while the Plaintiff was on a cruise and participating in a shore excursion offered, arranged for, sponsored, recommended, marketed, sold, co-operated and/or managed by Carnival. [D.E. 1, ¶12]. Specifically, the Plaintiff alleges that he suffered severe injuries while he was participating in the shore excursion, ATV Adventure, when the brakes on the ATV that he was riding failed and/or malfunctioned. [Id. at ¶19]. As a result, the Plaintiff initiated this lawsuit against Carnival alleging Negligence (Count I), Negligence Based on Apparent Agency or Agency by Estoppel (Count III), Negligence Based on Joint Venture (Count IV) and Third-Party Beneficiary (Count V). [D.E. 1].[1]

_____

[1] The Plaintiff also sued the other shore excursion operators, DELISLE WALWYN & CO. LTD.; VACATION AND TOUR CONSULTANTS (ST. KITTS) LTD. d/b/a KANTOURS a/k/a KANTOURS DESTINATION SERVICES (hereinafter collectively referred to as the "Excursion

At issue herein is the Motion to Dismiss filed by Carnival on November 30, 2015, wherein it seeks to dismiss Counts I, III, IV and V of the Plaintiff's Complaint. [D.E. 19].  Specifically, Carnival argues that 1) the Plaintiff's Negligence claim (Count I) (A) asserts duties and breaches that are allegedly not supported by maritime law; (B) fails to state a claim for failure to warn; and, (C) fails to state a claim for negligent hiring/retention; 2) the Plaintiff's Apparent Agency and Joint Venture claims (Counts III and IV) are theories of liability and not causes of action; 3) the Plaintiff's belief that the Excursion Entities were the agents of Carnival was unreasonable; and, 4) the Plaintiff failed to sufficient plead the parties' intent for the Joint Venture and Third-Party Beneficiary claims (Counts IV and V).

However, as demonstrated in detail below, all of its arguments fail because 1) the Complaint properly and succinctly states a claim for negligence that sets forth the Plaintiff's entitlement to relief with sufficient factual allegations in support of the claim; 2) the Plaintiff properly pled alternative theories of negligence under apparent agency and joint venture; 3) reviewing the Passenger Ticket Contract and the Tour Operator Agreement would cause this Court to improperly consider documents beyond the four corners of the Complaint; and, 4) a resolution of the arguments raised concerning the Plaintiff's belief and the parties' intent involve issues of fact.

Accordingly, Carnival's Motion to Dismiss should be denied in its entirety.

## II.  Standard for Motions to Dismiss for Failure to State a Claim

A motion to dismiss for failure to state a claim merely tests the sufficiency of the complaint; it does not decide the merits of the case. *Milburn v. United States*, 734 F.2d 762, 765 (11th Cir. 1984).  When considering such a motion, a court must accept the allegations in the plaintiff's complaint as true and construe them in the light most favorable to the plaintiff.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Lobo v. Celebrity Cruises, Inc.*, 704 F.3d 882, 887 (11th Cir. 2013).

In order to state a claim, Federal Rule of Civil Procedure 8 requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  The statement need only "give the defendant fair notice of what the... claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Entities").  The Excursion Entities filed a Motion a Dismiss for Lack of Personal Jurisdiction on December 11, 2015. [D.E. 24].

In sum, "[t]he threshold of sufficiency that a complaint must meet to survive a motion to dismiss for failure to state a claim is **exceedingly low**." *Bluegreen Corp. v. PC Consulting, Inc.*, 0780385CIV-RYSKAMP, 2007 WL 2225983 (S.D. Fla. July 31, 2007) (citing *In re Southeast Banking Corp.*, 69 F.3d 1539, 1551 (11th Cir. 1995)) (emphasis added). As such, this Court has routinely stated that such motions are "viewed with disfavor and rarely granted." *Jackson v. BellSouth Telecommunications, Inc.*, 181 F. Supp. 2d 1345 (S.D. Fla. 2001), aff'd sub nom. *Jackson v. BellSouth Telecommunications*, 372 F.3d 1250 (11th Cir. 2004) (citation omitted).

In applying the aforementioned standards to the case at bar, it is clear that Carnival's Motion to Dismiss for failure to state a claim should be denied.

**III. Count I: The Complaint properly and succinctly states a claim for negligence that sets forth the Plaintiff's entitlement to relief with sufficient factual allegations in support of the claim.**

Count I of the Plaintiff's Complaint asserts a general negligence claim against Carnival. In order to prevail on a maritime[2] negligence claim, a plaintiff must show that: 1) the defendant owed the plaintiff a duty; 2) the defendant breached that duty; 3) the breach was the proximate cause of the plaintiff's injury; and 4) the plaintiff suffered damages. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012) (internal citation omitted); *see also Hasenfus v. Secord*, 962 F.2d 1556, 1559-60 (11th Cir. 1992) (citing Florida law).

In its motion, Carnival raises three arguments for the claim's dismissal: A) it asserts duties and breaches that are allegedly not supported by maritime law; B) it fails to state a claim for failure to warn; and, C) it fails to state a claim for negligent hiring/retention. Each argument is addressed separately below.

    **A. Count I properly and succinctly states a claim for negligence without expanding the duties imposed by law, but rather, explaining how Carnival breached the duty of reasonable care owed to the Plaintiff, which is the proper standard.**

Carnival's first point of contention with regard to Count I is that the Complaint alleges a number of "duties" that are not supported by maritime law. [D.E. 19, pp. 3-6]. Contrary to its argument, however, the Complaint alleges the proper duty Carnival owed to the Plaintiff.

---

[2] It is undisputed that general maritime law applies to this case. [D.E. 1, ¶10, *see also* D.E. 19, p. 3].

Specifically, in the context of admiralty torts, a ship owner's "duty" was defined in the seminal case of *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625 (1959), where the U.S. Supreme Court held that "the owner of a ship in navigable waters owes to all who are on board for purposes not inimical to his legitimate interests the duty of exercising reasonable care under the circumstances of each case." *Id.* at 632.    Herein, consistent with *Kermarec*, the Plaintiff's Complaint properly alleges that "[i]t was the duty of Carnival to provide the Plaintiff with **reasonable care under the circumstances**." [D.E. 1, ¶30] (emphasis added). The Plaintiff therefore pleads the correct duty of care in this matter.

Notwithstanding the aforementioned, Carnival argues that the duty of reasonable care under the circumstances does not apply to incidents occurring *off* the vessel. [D.E. 19, p. 4]. Rather, according to Carnival, a cruise line merely owes passengers "beyond the port" (like the Plaintiff) a duty "to warn only of dangers of which the carrier knows, or reasonably should have known, to exist in the particular place where the passenger is invited to, or reasonably may be expected to visit." [Id.].  This argument, however, is entirely contrary to law.

In fact, according to the Eleventh Circuit, the duty of reasonable care is owed to passengers regardless of whether a tort occurred on the ship or in a scheduled port of call off the ship. *Doe v. Celebrity Cruises, Inc.*, 394 F.3d 891 (11th Cir. 2004).  In establishing this standard, the *Doe* court relied on the U.S. Supreme Court and focused on circumstances such as 1) that the stop "was a scheduled port-of-call, and was an integral part of the on-going cruise or maritime activity in this case" and 2) that "in many ways this particular incident effectively began and ended aboard the cruise ship." *Id.* at 901; *see also Norfolk Southern R. Co. v. Kirby*, 543 U.S. 14, 125 S.Ct. 385, 389, 160 L.Ed.2d 283 (2004) ("the shore is now an artificial place to draw a line").  The *Doe* court reasoned that destinations or ports of call are frequently "the main attraction" when a passenger selects a particular cruise. *Doe*, 394 F.3d at 901 (citing *Isham v. Pacific Far East Line, Inc.*, 476 F.2d 835, 837 (9th Cir. 1973) ("Where a passenger or cruise vessel puts into numerous ports in the course of a cruise, these stopovers are the sine qua non of the cruise.")).

Moreover, under *Doe*, "the purpose behind the exercise of this Court's admiralty jurisdiction is to provide for the uniform application of general maritime law." *Id.* at 902. Therefore, the standard of care that governs a cruise line "should be uniform and not vary from port to port on a single cruise." *Id.*  Under this analysis, the standard of care for negligence cannot vary depending on whether the tort occurred on the ship or at the port of call because it "would

upset the very uniformity that the Supreme Court has determined is so important for maritime activity." *Id.* (emphasis added); *see Sullivan v. Ajax Navigation Corp.*, 881 F. Supp. 906 (S.D.N.Y. 1995)[3]; *Forrester v. Ocean Marine Indemnity Co.*, 11 F.3d 1213 (5th Cir. 1993); *see also Tradewind Transportation Co. v. Taylor*, 267 F.2d 188 (9th Cir. 1959) (holding the common carrier liable when a passenger was injured on premises which were owned and controlled by a third party).

Herein, like *Doe*, the vessel's visit to St. Kitts was a scheduled port of call and was an integral part of the ongoing cruise. Also like *Doe*, the particular incident effectively began and ended aboard the cruise ship. As explained in *Sullivan*, it is immaterial that, in addition to Carnival, a third party may have controlled and/or owned the subject shore excursion. Therefore, Carnival's duty to exercise reasonable care extended to the Plaintiff's *entire* cruise, including, but not limited to, his participation in the subject shore excursion.

***The duty to warn is not a separate standard of care.*** Further contrary to Carnival's assertions, the duty to exercise reasonable care *includes* the duty to warn; the Plaintiff is not *expanding* Carnival's duties. In fact, Carnival's proposition that it owes onshore passengers a *separate* standard of care – a duty to warn – has repeatedly been refuted by numerous courts in this district. Specifically, in *Goldbach v. NCL (Bahamas) Ltd.*, the court recognized that a cruise line "owes a duty to its passengers to exercise reasonable care **under all the circumstances**. This duty ***includes*** a duty to warn passengers of dangers the cruise line knows or reasonably should have known." *Goldbach*, No. 06-21248-CIV, 2006 WL 3780705 (S.D. Fla. Dec. 20, 2006) (internal citations omitted) (emphasis added); *see also Wolf v. Celebrity Cruises, Inc.,* 101 F. Supp. 3d 1298, 1307 (S.D. Fla. 2015) ("The duty of care owed by a shipowner to its passengers of 'ordinary reasonable care under the circumstance'.... This duty ***includes*** a duty to warn passengers of dangers the cruise line knows or reasonably should have known.") (emphasis added); *Smolnikar v. Royal Caribbean Cruises Ltd.*, 787 F. Supp. 2d 1308, 1322 (S.D. Fla. 2011) (same); *Burdeaux v. Royal Caribbean Cruises, Ltd.*, No. 11-22798-CIV, 2012 WL 3202948, at *3 (S.D. Fla. Aug. 3, 2012) aff'd, 562 F. App'x 932 (11th Cir. 2014) (same).

---

[3] In a very persuasive holding, the *Sullivan* court stated, "It is well settled that a common carrier generally owes a high duty of care to provide its passengers with safe transportation under adequate supervision to and from a dock or pier. Such duty extends at least to the point of embarkation and debarkation. It does not cease at each port of call where the passengers are free to disembark. Rather, it is owed for the extent of the voyage." 881 F.Supp. at 908-09 (internal citations omitted).

Therefore, contrary to Carnival's contention, the duty to warn is not a separate standard of care. Rather, it is one of the many duties owed by a ship owner (both onboard and at scheduled ports of call) included within the "reasonable care under the circumstances" standard.

***The Plaintiff is not expanding Carnival's duties.*** Carnival also incorrectly claims that the Plaintiff seeks to hold Carnival liable for additional duties beyond the duties imposed by law. [D.E. 19, pp. 5-6]. At the outset, this argument fails because it is premised on the notion that cruise lines only have a duty to warn, which as discussed above, is incorrect. In addition, Carnival misconstrues the allegations set forth in Count I of the Plaintiff's Complaint.

Specifically, after alleging that Carnival owed the duty to provide the Plaintiff with reasonable care under the circumstances, the next paragraphs of the Complaint (paragraphs 31-32) go on to allege the specific ways in which Carnival *breached* the duty of reasonable care owed to the Plaintiff, including *inter alia*:

    a. Failure to provide a safe excursion; and/or

    b. Failure to adequately inspect and/or monitor excursion providers so as to ensure that the subject shore excursion was reasonably safe for cruise passengers and the Plaintiff; and/or

    c. Failure to properly supervise and oversee the excursion marketed, advertised, offered and sold to its guests; and/or

    …

    e. Failure to adequately inspect and/or monitor the subject shore excursion so as to ensure that the ATVs used for the subject shore excursion were regularly and adequately inspected and/or maintained; and/or

    …

    g. Failure to adequately inspect and/or monitor the policies and procedures of the Excursion Entities to ensure that the ATVs used for the subject shore excursion were regularly and adequately inspected and/or maintained; and/or

    h. Failure to adequately inspect and/or monitor the subject shore excursion so as to ensure that the ATVs used for the subject shore excursion were reasonably safe for Plaintiff and cruise passengers; and/or

    …

    j. Failure to adequately inspect and/or monitor the policies and procedures of the Excursion Entities to ensure that the ATVs used for the subject shore excursion were reasonably safe for Plaintiff and cruise passengers; and/or

    …

    p.  Failure to require the Excursion Entities to adequately instruct passengers (including the Plaintiff) on how to operate ATVs; and/or

…

    u.  Failure to require the Excursion Entities to adequately supervise passengers participating in the subject shore excursion; and/or

    v.  Failure to promulgate and/or enforce adequate policies and procedures to ensure that passengers participating in the subject shore excursion are adequately and/or properly instructed, assisted and/or supervised by the Excursion Entities; and/or

    w.  Failure to adequately inspect and/or monitor the policies and procedures of the Excursion Entities to ensure that the passengers participating in the subject shore excursion are adequately and/or properly instructed, assisted and/or supervised by the Excursion Entities…

[D.E. 1, ¶32].

Carnival takes issue with the above subsections of paragraph 32, arguing that the Plaintiff is alleging "duties" not supported by law. Contrary to its position, however, the above subsections are not alleged as separate "duties" – they are merely included to support the Plaintiff's negligence claim by pleading with sufficient factual information the specific ways in which Carnival *breached* the duty of reasonable care owed to the Plaintiff. Whether it is considered "reasonable under the circumstances" (and therefore a breach) for Carnival to have taken the actions discussed in the subsections should not be determined at this pleading stage.

To that end, courts have repeatedly rejected the exact same argument Carnival makes, holding that it is an issue more appropriate for summary judgment. For instance, in *Balaschak v. Royal Caribbean Cruises, Ltd.*, No. 09-21196-CIV, 2009 WL 8659594, (S.D. Fla. Sept. 14, 2009), the court stated as follows:

According to Celebrity, [plaintiff] alleges "various duties" that are not owed by a carrier to a passenger under maritime law… Celebrity asserts that Count VI should be dismissed because [plaintiff] alleges she was owed a duty "greater than that supported by the law."….

Here, [plaintiff] has pleaded facts showing that Celebrity owed her, as a passenger, a duty of care. [Plaintiff's] allegations have therefore notified Celebrity of her claim…. The merits of Count VI are best tested with a motion for summary judgment.

*Id.* at \*5; *see also Bridgewater v. Carnival Corp.*, No. 10-22241-CIV, 2011 WL 817936, at \*2 (S.D. Fla. Mar. 2, 2011) ("Carnival disputes whether it owed a duty to Plaintiff under the facts as pleaded. However such a contention is more appropriate for summary judgment than for the consideration upon a motion to dismiss.")

Similarly, courts in this district have consistently refused to dismiss individual alleged breaches (as Carnival requests in its motion), stating that even though "certain of the alleged breaches… may not adequately state a negligence claim, the Court will not strike the alleged breaches in line-item fashion" when the plaintiff sufficiently alleges a facially plausible negligence claim. *See Caldwell v. Carnival Corp.*, 944 F. Supp. 2d 1219, 1224 (S.D. Fla. 2013); *McLean v. Carnival Corp.*, No. 12-24295-CIV, 2013 WL 1024257, at \*5 (S.D. Fla. Mar. 14, 2013); *see also Holguin v. Celebrity Cruises, Inc.*, No. 10-20215-CIV, 2010 WL 1837808, at \*1 (S.D. Fla. May 4, 2010).

In sum, the duty of reasonable care under the circumstances is owed to passengers to the extent of their *entire* cruise – even where a cruise ship passenger has been injured in a port of call off of the ship.  This standard of care *includes* the duty to warn passengers and does not amount to an expansion of Carnival's duties.

**B.  Count I unquestionably alleges underlying facts concerning Carnival's actual and/or constructive notice concerning the dangerous condition(s) at issue in support of the Plaintiff's failure to warn claims.**

The next argument Carnival asserts regarding the negligence claim is that the Plaintiff "fails to allege any underlying facts which would support any breach of the duty to warn." [D.E. 19, p. 7].

The applicable standard of reasonable care "requires, as a prerequisite to imposing liability, that the carrier have had actual or constructive notice of the risk-creating condition". *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1322 (11th Cir. 1989).  Constructive notice may be established through evidence which shows 1) that the dangerous condition existed for such a length of time that in the exercise of ordinary care, the defendant should have known of the condition, or 2) that the condition occurred with regularity and was therefore foreseeable. *See Kloster Cruise Ltd. v. Grubbs,* 762 So. 2d 552 (Fla. 3d DCA 2000).

Herein, among the ways Plaintiff alleges that Carnival breached its duty of reasonable care was by failing to adequately warn the Plaintiff that 1) Carnival does not inspect and/or maintain

the ATVs used for the subject shore excursion; 2) Carnival does not verify that the ATVs used for the subject shore excursion were reasonably safe, inspected, and/or maintained; 3) the dangers involved with the subject ATV; and, 4) the dangers of participating in the subject shore excursion. [D.E. 1, ¶32(k)-(m)].  The Complaint then goes on to allege Carnival's actual and/or constructive knowledge as follows:

> Carnival knew of the foregoing conditions causing the subject incident and did not correct them, or the conditions existed for a sufficient length of time so that Carnival, in the exercise of reasonable care under the circumstances, should have learned of them and corrected them. ***Specifically, in approving the subject excursion, Carnival's*** ***inspections*** ***should have revealed the hazards that the excursion posed to cruise passengers like the Plaintiff. Further, the Plaintiff anticipates that discovery will reveal that, prior to the Plaintiff's incident,*** ***other*** ***cruise ship passengers were also injured participating in the same shore*** ***excursion.***

[D.E. 1, ¶34] (emphasis added).

The Complaint therefore contains detailed facts from which it may be inferred that Carnival either knew or should have known of the dangerous and/or unsafe conditions associated with the subject excursion, including Carnival's **inspections** of the shore excursion as well as **prior incidents** involving cruise ship passengers being injured while participating in the same shore excursion.

Furthermore, Carnival misconstrues the law by arguing that discovery can *never* form a basis to support a legal conclusion.  In actuality, the determinative factor is whether the Complaint contains enough factual allegations "to raise a right to relief above the speculative level… on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (internal citations omitted).  Applying such standard as it relates to the use of discovery, both the U.S. Supreme Court and the Eleventh Circuit agree that **it is only necessary that the allegations in the complaint "raise a reasonable expectation that *discovery will reveal evidence*" corroborating the Plaintiff's claim.** *See Twombly*, 550 U.S. at 556 (emphasis added), 570; *see also Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (in reversing the district court's dismissal, the court held that the plaintiff's allegations concerning the "failure-to-warn claim" were "plausible and raise[d] a reasonable expectation that discovery could supply additional proof of Carnival's liability").

Moreover, despite the representation made by Carnival in its motion, the Plaintiff does not actually "***blatantly admit*** that he intends to embark on a fishing expedition without alleging ***any facts whatsoever*** to raise a reasonable expectation that discovery will reveal evidence" supporting his claim. [D.E. 19, p. 10] (emphasis added). As demonstrated above, the Plaintiff does not solely rely on the discovery of previous incidents involving cruise ship passengers injured while participating in the same shore excursion. The Plaintiff *also* relies on the fact that Carnival had actual and/or constructive notice of the dangerous and/or unsafe conditions associated with the excursion from the "inspections" Carnival conducted "in approving the subject excursion" [D.E. 1, ¶34].

These allegations effectively "raise a reasonable expectation that discovery will reveal evidence" corroborating the Plaintiff's claim, consistent with the U.S. Supreme Court holding in *Twombly* and the Eleventh Circuit in *Chaparro*. Ultimately, the Plaintiff is not required to plead evidence, nor is he required to plead every single fact upon which his claim is based. *See Gentry v. Carnival Corp.*, 11-21580-CIV, 2011 WL 4737062 (S.D. Fla. 2011) ("[plaintiff] is not required to plead evidence, nor even all the facts upon which her claim is based"); *see also Ash v. Royal Caribbean Cruises Ltd.*, No. 13-20619-CIV, 2014 WL 6682514, at *6 (S.D. Fla. Nov. 25, 2014) ("As a practical matter, a personal injury plaintiff is often unaware of specific facts demonstrating that the defendant knew or should have known of a dangerous condition at the time the lawsuit is filed, before taking discovery. Plaintiffs sometimes obtain evidence of the defendant's knowledge during discovery, such as by obtaining evidence that the defendant was aware of prior injuries occurring under similar circumstances.").

## C. Count I the allegations concerning Carnival's negligent selection and/or retention of the Excursion Entities give Carnival fair notice of what the claim is and the grounds upon which it rests.

Carnival's last argument concerning the negligence claim is that the Plaintiff fails to plead a prima facie case for negligent selection and retention. [D.E. 19, pp. 10-11].

It is "well-established that [cruise lines] may be liable for negligently hiring or retaining a contractor," including shore excursion operators. *Smolnikar v. Royal Caribbean Cruises Ltd.*, 787 F. Supp. 2d 1308, 1318 (S.D. Fla. 2011) (citing *In re Central Gulf Lines, Inc.*, 176 F.Supp.2d 599, 622 (E.D. La. 2001) ("Absent any negligence on the part of the shipowner in selecting the independent contractor or in continuing to use the independent contractor, such as a ship's

physician, the carrier cannot be held liable for the independent contractor's negligence."); *Barbetta v. S/S Bermuda Star*, 848 F.2d 1364, 1372 (5th Cir. 1988)); *Guarascio v. Drake Associates Inc.*, 582 F.Supp.2d 451, 457 (S.D.N.Y. 2008) (providing standard for claim alleging negligent selection of independent contractor in maritime action); *Jackson v. Carnival Cruise Lines, Inc.*, 203 F.Supp.2d 1367, 1374 (S.D. Fla. 2002) (recognizing cause of action against shipowner for negligent selection of a physician, who is an independent contractor)).

Specifically, under Florida law, a principal may be subject to liability "for physical harm to third persons caused by his failure to exercise reasonable care to employ a competent and careful contractor (a) to do work which will involve a risk of physical harm unless it is skillfully and carefully done, or (b) to perform any duty which the employer owes to third persons." *Smolnikar*, 787 F. Supp. 2d at 1318 (citation omitted).  Where such a duty exists, a plaintiff bringing a claim for negligent hiring or retention of an independent contractor must prove that "(1) the contractor was incompetent or unfit to perform the work; (2) the employer knew or reasonably should have known of the particular incompetence or unfitness; and (3) the incompetence or unfitness was a proximate cause of the plaintiffs injury." *Id.* (citations omitted).

Herein, the Plaintiff's Complaint sufficiently pleads that Carnival negligently hired and/or retained the Excursion Entities through the following acts and/or omissions by Carnival:

b.  Failure to adequately inspect and/or monitor excursion providers so as to ensure that the subject shore excursion was reasonably safe for cruise passengers and the Plaintiff; and/or

c.  Failure to properly supervise and oversee the excursion marketed, advertised, offered and sold to its guests; and/or

…

e.  Failure to adequately inspect and/or monitor the subject shore excursion so as to ensure that the ATVs used for the subject shore excursion were regularly and adequately inspected and/or maintained; and/or

…

g.  Failure to adequately inspect and/or monitor the policies and procedures of the Excursion Entities to ensure that the ATVs used for the subject shore excursion were regularly and adequately inspected and/or maintained; and/or

h.  Failure to adequately inspect and/or monitor the subject shore excursion so as to ensure that the ATVs used for the subject shore excursion were reasonably safe for Plaintiff and cruise passengers; and/or

…

j.  Failure to adequately inspect and/or monitor the policies and procedures of the Excursion Entities to ensure that the ATVs used for the subject shore excursion were reasonably safe for Plaintiff and cruise passengers; and/or

…

p.  Failure to require the Excursion Entities to adequately instruct passengers (including the Plaintiff) on how to operate ATVs; and/or

q.  Failure to provide competent tour guides for the subject excursion, ***based on the lack of and/or inadequate safety/practice lesson given to the Plaintiff and/or cruise passengers prior to the subject incident***; and/or

…

s.  Failure to require the Excursion Entities to provide adequate assistance to passengers (including the Plaintiff) while participating in the subject shore excursion; and/or

…

u.  Failure to require the Excursion Entities to adequately supervise passengers participating in the subject shore excursion; and/or

v.  Failure to promulgate and/or enforce adequate policies and procedures to ensure that passengers participating in the subject shore excursion are adequately and/or properly instructed, assisted and/or supervised by the Excursion Entities; and/or

w.  Failure to adequately inspect and/or monitor the policies and procedures of the Excursion Entities to ensure that the passengers participating in the subject shore excursion are adequately and/or properly instructed, assisted and/or supervised by the Excursion Entities; and/or

x.  ***Having a shore excursion that was not competently operated***; and/or

y.  Negligently selecting and/or retaining the Excursion Entities to operate the subject excursion ***despite their incompetence and/or unfitness***.

[D.E. 1, ¶32] (emphasis added).

Thus, pursuant to the above allegations, the Plaintiff's claim that Carnival negligently hired and/or retained the Excursion Entities is supported by facts that include, but are not limited to, the Excursion Entities' "incompetence and/or unfitness"; the subject excursion's incompetent tour guides "based on the lack of and/or inadequate safety/practice lesson given to the Plaintiff and/or cruise passengers prior to the subject incident"; the shore excursion "not [being] competently

operated"; and Carnival not inspecting and/or supervising the subject shore excursion, the Excursion Entities, and/or the Excursion Entities' policies and procedures. [D.E. 1, ¶32]. The allegations are also "sufficient to draw a reasonable inference" that the ATVs used in the excursion were not properly inspected and/or maintained, thereby also supporting the Excursion Entities' incompetence and/or unfitness. *See Iqbal*, supra.

These acts and/or omissions are alleged to have "caused and/or contributed to the Plaintiff being severely injured while participating in the subject shore excursion." [D.E. 1, ¶33]. The Plaintiff's Complaint further alleges that Carnival had actual and/or constructive knowledge of the foregoing conditions causing the subject incident based on the "inspections" Carnival conducted "in approving the subject excursion" and previous incidents involving cruise ship passengers injured while participating in the same shore excursion. [D.E. 1, ¶34].

The Plaintiff's Complaint therefore sufficiently pleads a prima facie case for negligent selection and retention.

**IV. Count III: Plaintiff's Apparent Agency or Agency by Estoppel claim is properly pled as a negligence claim under an alternative agency theory of liability, and any questions as to the reasonableness of the Plaintiff's belief involve questions of fact that are improper to determine at this pleading stage.**

Count III of the Plaintiff's Complaint is a negligence claim against Defendants based on apparent agency or agency by estoppel. In short, this claim alleges that Carnival is vicariously liable for the negligence of the Excursion Entities because the Excursion Entities were apparent agents of Carnival.

In its motion, Carnival asserts two arguments for the dismissal of this claim: (1) there is no independent cause of action for agency; and (2) the Plaintiff's belief that the Excursion Entities were the agents of Carnival was unreasonable. [D.E. 19, pp. 11-14]. As addressed separately below, these arguments fail for multiple reasons, including A) the Complaint unambiguously states that it is a negligence claim based on an agency theory of liability; B) it improperly invites this Court to review documents beyond the four corners of the Complaint; and, C) the reasonableness of the Plaintiff's belief is a factual determination, which is improper at this stage.

**A. The Complaint unambiguously states that Count III is a *negligence* claim.**

As stated, Carnival first argues that it should be dismissed because there is no independent cause of action for agency. [D.E. 19, p. 11]. This exact argument has repeatedly been refuted by courts in this district – even in the same case that Carnival relies on in its motion. *See Gayou v.*

*Celebrity Cruises, Inc.*, 11-23359-CIV, 2012 WL 2049431 at *8 n.4 (S.D. Fla. June 5, 2012) ("A fair reading of the substance of the claims, however, makes plain that [plaintiff] is really pleading negligence causes of action that are grounded on an agency theory of liability. The Court so construes them, their respective labels notwithstanding."); *see also Ash v. Royal Caribbean Cruises Ltd.*, No. 13-20619-CIV, 2014 WL 6682514 at *7 (S.D. Fla. Nov. 25, 2014) (agreeing with *Gayou*).

Regardless, however, Carnival's boilerplate argument has no application here because the Complaint specifically states that it is a claim for "Negligence against Defendants based on Apparent Agency or Agency by Estoppel" [D.E. 1, p. 17].  Federal Rule of Civil Procedure 8 permits alternative pleading. *See* Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient.").  Thus, whereas Count I is a direct negligence count against Carnival, Count III is a negligence claim under the theory of apparent agency or agency by estoppel.

**B.  <u>Determining whether or not the Plaintiff's allegations are contradicted by the Tour Operator Agreement would require this Court to improperly review documents beyond the four corners of the complaint.</u>**

Carnival's second argument is that the Plaintiff's belief that the Excursion Entities were Carnival's agents was unreasonable as a matter of law because the terms of the Passenger Ticket Contract allegedly state that Carnival does not own or control the shore excursion operators. [D.E. 19, p. 12-14].

It is well settled that, at this stage, the scope of a court's "review must be limited to the four corners of the complaint." *St. George v. Pinellas County,* 285 F.3d 1334, 1337 (11th Cir. 2002) (citing *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000)).  In fact, pursuant to binding Eleventh Circuit precedent, the general rule is that a district court does "not consider anything beyond the face of the complaint… when analyzing a motion to dismiss." *Financial Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007) (citation omitted). The only exception to this rule does not apply in this case.

Specifically, the Eleventh Circuit "recognizes an exception… in cases in which [1] a plaintiff refers to a document in its complaint, [2] the document is central to its claim, [3] its contents are not in dispute, ***and*** [4] the defendant attaches the document to its motion to dismiss."

*Id.* (emphasis added).  The facts herein do not meet **all four** requirements, as necessary.  *See SIG, Inc. v. AT & T Digital Life, Inc.*, 971 F. Supp. 2d 1178, 1188 (S.D. Fla. 2013) (noting that "each of [the] requirements" must be met).

The first requirement is not met because the Plaintiff never specifically referred to the "Passenger Ticket Contract" in his Complaint.  In fact, the Plaintiff's Complaint never refers to any agreement or contract between the Plaintiff and Carnival whatsoever.

The second requirement is not met either because the Passenger Ticket Contract is not central to the Plaintiff's claims against Defendants.  The Plaintiff is not relying on the Passenger Ticket Contract to prove his claims.  Rather, the claims arise from the negligent conduct of the cruise line (Carnival) and the shore excursion providers (the Excursion Entities).  Addressing the same arguments as Carnival raises herein, courts in this district have refused to consider the contracts, finding that the plaintiff "does not rely on the [passenger ticket] contract for any of his claims." *Belik v. Carlson Travel Grp., Inc.*, 864 F. Supp. 2d 1302, 1310 (S.D. Fla. 2011); *see also Gentry*, 2011 WL 4737062 ("[plaintiff] does not assert any breach of contract claims against [defendant]. Instead, she asserts claims based on tort theories. As such, the ticket contract is not essential or integral to [plaintiff's] claims, rather, it is part of [defendant's] defenses.").  Thus, as in *Belik* and *Gentry*, because Count III is not asserting a breach of contract claim, the alleged agreement between the Plaintiff and Carnival is not essential or integral to the Plaintiff's negligence claim based on an agency theory of liability.

Similarly, the third requirement is not met either because the contents of the document are in dispute.  "A document is considered 'undisputed' when the 'authenticity of the document is not challenged.'" *Fuller v. SunTrust Banks, Inc.*, 744 F.3d 685, 696 (11th Cir. 2014) (citation omitted).  Herein, the Plaintiff does not know whether this is the actual Passenger Ticket Contract in effect at the time of the subject incident.  The contract has not been authenticated, and even Carnival admits that it is only filing an "exemplar" contract. [D.E. 19, p. 13].  The Plaintiff therefore disputes the authenticity of the document.

Accordingly, because Carnival fails to demonstrate the applicability of the exception set forth in *Stephens*, this Honorable Court should not depart from the general rule that it does "not consider anything beyond the face of the complaint… when analyzing a motion to dismiss." *Stephens*, 500 F.3d at 1284.

**C. The reasonableness of the Plaintiff's belief that the Excursion Entities were Carnival's agents is a factual determination.  At this stage, the allegations in the Plaintiff's Complaint, which are taken as true and construed in the light most favorable to the Plaintiff, are sufficient to state a plausible entitlement to relief.**

Even if this Honorable Court considers the Passenger Ticket Contract at the motion to dismiss stage, the contract does not call for the dismissal of Count III because the reasonableness of the Plaintiff's belief that the Excursion Entities were Carnival's agents is a question of fact.

"Courts in the Eleventh Circuit sitting in admiralty have held that Federal Maritime Law embraces the principles of agency and that **the existence of an agency relationship is a question of fact**." *Doonan v. Carnival Corp.*, 404 F. Supp. 2d 1367, 1371 (S.D. Fla. 2005) (citing *Warren v. Ajax Navigation Corp.*, 1995 AMC 2609 (S.D. Fla. 1995); *Archer v. Trans/American Servs., Ltd.*, 834 F.2d 1570, 1573 (11th Cir. 1988)) (emphasis added); *see also Belik v. Carlson Travel Grp., Inc.*, 864 F. Supp. 2d 1302, 1310-11 (S.D. Fla. 2011) ("generally the question of whether an agency relationship exists is a factual question").

To that end, apparent agency is established when: "1) the alleged principal makes some sort of manifestation causing a third party to believe that the alleged agent had authority to act for the benefit of the principal, 2) that such belief was reasonable and 3) that the claimant reasonably acted on such belief to his detriment." *Doonan*, 404 F. Supp. 2d at 1371.[4]  To be clear, Carnival only raises an issue as to the second element, i.e., that the "Plaintiff cannot state a claim for apparent agency as a matter of law because he cannot plead that he reasonably believed that Carnival and the Excursion Entities were agents." [D.E. 19, p. 12].

In support of its argument, Carnival relies on two cases, *Hajtman v. NCL (Bahamas) Ltd.* and *Wajnstat v. Oceania Cruises, Inc.*  However, those cases are easily distinguishable because they involved allegations of inadequate and/or improper medical care by the shipboard doctors. The courts therefore held that the plaintiffs' belief was "unreasonable as a matter of **law**" because the case law at the time[5] held that cruise lines were not vicariously liable for their medical staff as a matter of law. *See Hajtman*, 526 F.Supp.2d at 1328-9; *Wajnstat*, 2011 WL 465340, at *4 ("Given the long standing maritime principle that carriers and shipowners are not vicariously liable for the

---

[4] "In Florida, agency by estoppel is nearly the same as apparent agency. The Eleventh Circuit does not even consider the two separately." *Belik*, 864 F. Supp. 2d at 1312 (citation omitted).
[5] Those cases and/or holdings have since been abrogated by the Eleventh Circuit's opinion in *Franza v. Royal Caribbean Cruises, Ltd.*, 772 F.3d 1225 (11th Cir. 2014).

acts of their medical staff… it is unreasonable for Plaintiff to believe that [the medical staff] were Defendant's agents."); *see also Gentry*, 2011 WL 4737062, at *5 (distinguishing *Hajtman* in refusing to consider the passenger ticket contract at the motion to dismiss stage for a shore excursion case).

That is not the case with cruise lines and shore excursion operators.  In fact, district courts have consistently denied cruise line's motions to dismiss claims for apparent agency by properly relying solely on plaintiffs' allegations. *See Lapidus v. NCL Am. LLC*, No. 12-21183-CIV, 2012 WL 2193055, at *5 (S.D. Fla. June 14, 2012) ("Plaintiff has adequately pled his claim for apparent agency as NCL's alleged manifestations are sufficient, at the pleading stage, to cause Plaintiff to believe that the Excursion Entities had authority to act for NCL's benefit"); *Belik*, 864 F. Supp. 2d at 1311 (S.D. Fla. 2011); *see also Gentry*, 2011 WL 4737062, at *6 ("Considering only the allegations in the complaint, it cannot be said that [plaintiff's] belief that an agency relationship existed was unreasonable as a matter of law.")

Herein, like *Lapidus*, *Belik* and *Gentry*, a review of the facts alleged by the Plaintiff in the Complaint supports the claim that the Plaintiff reasonably believed that the Excursion Entities were Carnival's agents, including:

    a.  Carnival allowed its name to be utilized in connection with the advertising of the Excursion Entities; and/or

    b.  Carnival made all arrangements for the subject shore excursion without effectively disclosing to the Plaintiff that the subject shore excursion was being run by another entity (and/or entities); and/or

    c.  Carnival marketed the subject shore excursion using its company logo on its website and/or in its brochures and/or on its ship without effectively disclosing to the Plaintiff that the subject shore excursion was being run by another entity (and/or entities); and/or

    d.  Carnival maintained an excursion desk on its ship whereby it offered, sold, provided information to, and answered questions of passengers about the subject shore excursion without effectively disclosing to the Plaintiff that the subject shore excursion was being run by another entity (and/or entities); and/or

    e.  Until the point that Plaintiff actually participated in the subject shore excursion, the Plaintiff's exclusive contacts concerning the subject shore excursion was with Carnival; and/or

     f.   Carnival recommended to Plaintiff to not engage in excursions, tours or activities that are not sold through Carnival as Carnival has no familiarity with other tours or their operations; and/or

     g. The fee for the excursion was charged to the Plaintiff, and collected from the Plaintiff, exclusively by Carnival; and/or

     h. Plaintiff received the receipt for the purchase of the subject shore excursion exclusively from Carnival.

[D.E. 1, ¶45].

Further, the Complaint explicitly alleges that the "Plaintiff reasonably relied on the above, to his detriment, so as to believe that the Excursion Entities were the employee(s) and/or agent(s) of Carnival in choosing the subject shore excursion." [Id. at ¶46]. Considering these allegations, which are taken as true and construed in the light most favorable to the Plaintiff, the Complaint sets out a claim for apparent agency sufficient to state a plausible entitlement to relief. *See Iqbal*, 556 U.S. at 678.

Carnival's grounds for dismissal are therefore without merit and improper at this juncture of the case.

**V.**  **Count IV: The Complaint includes enough factual allegations from which it can be inferred that Carnival and the Excursion Entities intended to create a joint venture, and examining the Tour Operator Agreement (as Carnival requests) would require this Court to improperly review documents beyond the four corners of the Complaint.**

Count IV of the Plaintiff's Complaint is a negligence claim based on a theory of vicarious liability under joint venture. The Plaintiff alleges that Carnival and the Excursion Entities engaged in a joint venture to operate the subject shore excursion, thereby making Carnival liable for the negligence of the Excursion Entities.

To maintain a cause of action for joint venture there must be the concurrence of the following elements: 1) a community of interest in the performance of the common purpose; 2) joint control or right to control; 3) a joint proprietary interest in the subject matter; 4) a right to share in the profits; and 5) a duty to share any losses which may be sustained. *See Sasportes v. M/V Sol de Copacabana*, 581 F.2d 1204, 1208 (5th Cir. 1978). However, these elements "cannot be applied mechanically," and no singular aspect of the relationship is decisive. *Id.* (citing *Hyman*

*v. Regenstein*, 258 F.2d 502, 513 (5th Cir. 1958), *cert. denied* 359 U.S. 913, 79 S.Ct. 589, 3 L.Ed.2d 575 (1959)).[6]

Herein, the Plaintiff's Complaint alleges all of the necessary elements to support the theory that Carnival and the Excursion Entities engaged in a joint venture.[7]  As to the ***first element***, the Complaint alleges that Carnival and the Excursion Entities shared a "common purpose", which was "to operate the shore excursion for a profit." [D.E. 1, ¶56].

The ***second element*** is also sufficiently pled with allegations pertaining to the joint control that Carnival and the Excursion Entities possessed over the shore excursion:

> As its part of the joint venture, Carnival arranged for, sponsored, recommended, marketed, operated, marketed, sold and/or collected money for the subject shore excursion and the money was then shared between Carnival and the Excursion Entities. As its part of the joint venture, the Excursion Entities provided labor and/or operated the subject shore excursion.
> ….
>
> At all times material hereto, Carnival and the Excursion Entities had **joint and/or shared control over aspects of the joint venture**. The Excursion Entities had control over the day-to-day workings of the excursions. Carnival also had control over the day-to-day workings of the excursions in that they required the Excursion Entities to exercise reasonable care in the operation of the subject shore excursion. Carnival had control over the arrangements, marketing and sales of the excursion.
> ….
>
> At all times material hereto, Carnival and the Excursion Entities therefore:… Had mutual control and/or joint control over the subject matter of the venture with respect to the provision of excursions to passengers aboard the ship;

[D.E. 1, ¶¶53, 55, 60] (emphasis added).

Similarly, the ***third element*** is alleged with sufficient facts supporting the conclusion that Carnival and the Excursion Entities had a joint proprietary interest in operating the shore excursion for a profit, as follows:

---

[6] For example, many business dealings other than joint ventures might involve joint property holdings; and although a joint right of control is one of the elements, it is commonplace for one joint venturer to delegate control of operations entirely to the other, creating the appearance that there is no shared control. *See, e.g. Shell Oil Co.  v. Prestidge*, 249 F.2d 413, 416 (9th Cir. 1957).

[7] In passing, Carnival makes a general statement that the Plaintiff's joint venture claim is pled "with no supporting factual basis." [D.E. 19, p. 15].  Although Carnival then focuses only on the argument that the Plaintiff supposedly does not allege Defendants' intent to create a joint venture, the Plaintiff addresses all of the elements in an abundance of caution.

At all times material hereto, Carnival and the Excursion Entities had a **joint proprietary and/or ownership interest** in the subject shore excursion. Carnival had an interest in arranging, sponsoring, recommending, advertising, operating, and selling the subject shore excursion as well as collecting money for such excursion, and the Excursion Entities had a proprietary interest in the time and labor expended in operating the subject shore excursion.

....

At all times material hereto, Carnival and the Excursion Entities therefore:... Had a joint proprietary interest in the subject matter of the venture;

[D.E. 1, ¶¶57, 60] (emphasis added).

Finally, the ***fourth and fifth elements*** are also properly pled with enough facts concerning Carnival and the Excursion Entities' right to share profits, as well as the duty to share fiscal losses:

Carnival, on behalf of the joint venture, charged a fee to passengers who utilized the excursions. **The fee was split between Carnival and the Excursion Entities.**

....

At all times material hereto, Carnival and the Excursion Entities **shared any losses sustained from the joint venture**.

....

At all times material hereto, Carnival and the Excursion Entities therefore: ...
d. Had a **right to share in the profits** of the joint venture; and
e. **Would share losses** which may have been sustained.

[D.E. 1, ¶¶54, 58, 60] (emphasis added).

Therefore, the above factual allegations sufficiently support the theory that Carnival and the Excursion Entities engaged in a joint venture, making them liable for each other's negligence.

In its Motion to Dismiss, Carnival claims the Plaintiff fails to allege that the parties intended to create a joint venture [D.E. 8, p. 13].[8] In actuality, however, the Complaint does in

---

[8] Carnival also makes the same boilerplate argument that "there is no cause of action for 'joint venture,'" but this argument fails for the same reasons set forth above in Section IV(A), i.e., the Complaint explicitly states that it is a "Negligence" claim, and it based on an alternative theory of liability, which is proper under the Federal Rules of Civil Procedure and has previously been upheld by district courts. In fact, despite the fact that Carnival's motion fails to give the full quote, the case that it relies on, *Ash v. Royal Caribbean Cruises Ltd.*, No. 13-20619-CIV, 2014 WL 6682514 (S.D. Fla. Nov. 25, 2014), agreed with the plaintiffs by simply considering it a negligence claim under the alternative theory of joint venture. *See Ash.,* 2014 WL 6682514, at *8 ("There is no cause of action for 'Joint Venture,' ***but, as with Count III, it is clear from review of the substance of the count that Plaintiffs' Count IV simply advances another alternative theory for negligence liability—namely,***

fact explicitly allege that "Carnival and the Excursion Entities… "[h]ad an **intention to create a joint venture**". [D.E. 1, ¶60] (emphasis added).  That allegation is further reflected and supported by the facts in paragraph 51, which alleges that "Carnival and the Excursion Entities engaged in a joint venture to provide excursions to passengers aboard Carnival's ship(s)." [Id. at ¶51].[9]

Notably, Carnival does not cite a single case for its proposition that the claim should be dismissed for the Plaintiff's alleged (albeit, incorrect) failure to plead Defendants' intention to create a joint venture.  Instead, Carnival merely states that this Court should look at the contract between Carnival the Excursion Entities to determine the intent of the parties.  That suggestion, however, still fails for two reasons.

*First, determining whether or not the intention of the Defendants is set forth in the Tour Operator Agreement would require this Court to improperly review documents beyond the four corners of the Complaint.*  As discussed above and as is well-established, the scope of a court's "review must be limited to the four corners of the complaint." *St. George*, supra; *see also Stephens*, supra.  Like the Passenger Ticket Contract, the facts here do not meet all four requirements, as necessary, to review the Tour Operator Agreement.

Specifically, the Plaintiff never specifically referred to the "Tour Operator Agreement" or any "written" agreement or contract between Defendants, which is the first requirement.  The Tour Operator Agreement is not central to the Plaintiff's claims against Defendants (the second requirement) because Count IV is not a breach of contract claim, but rather, a negligence claim. The Plaintiff therefore does not need the contract to prove his claim.  In fact, a written agreement is not even necessary for the Plaintiff to prove a joint venture between the parties.  "A joint venture, like a partnership, can be created by express or implied contract", *Williams v. Obstfeld*, 314 F.3d 1270, 1275-76 (11th Cir. 2002), and two parties could create a joint venture notwithstanding a

---

that because Royal Caribbean and the Excursion Entities were engaged in a joint venture, Royal Caribbean is liable for the Excursion Entities' negligent conduct.*") (emphasis added).
[9] Assuming, *arguendo*, that the Plaintiff did not specifically allege the "intent of the parties to the joint venture," this hyper-technical failure does not warrant dismissal under *Sasportes*.  Ultimately, the existence of a joint venture may be implied or inferred from the conduct of the parties or from acts and circumstances, which in fact make it appear that they are participants in a joint venture. In this case, as set forth earlier in detail, the Complaint includes enough information from which it can be inferred that NCL and the Ship's Doctors intended to create a joint venture (i.e., they each had control over the venture; they made contractual arrangements to share profits and losses, etc.).

prior written contract foreclosing such a possibility. *Ash v. Royal Caribbean Cruises Ltd.*, No. 13-20619-CIV, 2014 WL 6682514 (S.D. Fla. Nov. 25, 2014).

Further, like the Passenger Ticket Contract, the third requirement is not met either because the contents of the document are in dispute. The contract has not been authenticated, and the Plaintiff does not know whether this is the actual agreement in effect at the time of the incident. For instance, the contract calls for a commencement date of "November 2, 2004" and appears to be dated "12/11/04" [D.E. 19-4, ¶3 and p. 4], but this incident occurred on or about December 12, 2014. [D.E. 1, ¶21].

***Second, even if this Honorable Court reviews the Tour Operator Agreement as Carnival requests, it will still find that a determination as to the Excursion Entities' true role (i.e., independent contractors or joint venturers) is an issue of fact concerning the contractual parties' intent.*** In its motion, Carnival points to the language in the contract which states that Excursion Entities are considered "Independent Contractor(s)." [D.E. 19, pp. 15]. However, the "**ultimate determination**" as to whether a joint venture exists between parties "turns upon **evidence of intent** of the parties." *Wachovia Bank, N.A. v. Tien*, 534 F. Supp. 2d 1267, 1287 (S.D. Fla. 2007) (emphasis added). And pursuant to the Eleventh Circuit, "[t]he court must look at the contract *as a whole*, the parties, and the purpose of the agreement to best determine the intent of the parties in interpreting the agreement." *Slater v. Energy Servs. Grp. Int'l, Inc.*, 634 F.3d 1326, 1330 (11th Cir. 2011) (emphasis added).

Herein, even a cursory review of the contract as a whole demonstrates a clear intent of the parties to create a joint venture (notwithstanding the way they chose to define the relationship). For instance, Section 5 of the agreement provides that the Excursion Entities are responsible for arranging and providing the shore excursion. Carnival, however, has "sole discretion" to determine whether a passenger is entitled to a full or partial reimbursement of the shore excursion ticket if such passenger is dissatisfied. Pursuant to Section 4, Carnival also has "sole discretion" to determine the price to charge passengers for Excursion Entities' excursion and Carnival is the party that directly collects payments from the passengers for the Excursion Entities' excursion. Further, Section 10 requires the Excursion Entities to indemnify Carnival "from and against any and all losses, claims… legal fees, costs and expenses" arising from the Excursion Entities'

operations of the excursion.[10] Moreover, Section 13 gives Carnival the right to "inspect, audit and copy the Carnival-related Shore Excursion information in [the Excursion Entities'] books and records… at any reasonable time" [D.E. 19-4].

At the very least, the above contractual provisions create a question of fact for the jury to determine whether or not the parties intended to form a joint venture. *See Misco-United Supply, Inc., v. The Petroleum Corporation et al.*, 462 F.2d 75, 80 (5th Cir. 1972) ("Opposing inferences from contractual provisions as to the intentions of the parties regarding the creation of a joint venture will ordinarily give rise to a question of fact."). Many courts – including binding precedent – agree that whether or not a group of persons constitute a joint venture is a **question of fact** to be resolved by the jury. *See Rose v. M/V Gulf Stream Falcon*, 186 F. 3d 1345 (11th Cir. 1999) ("[…] the district court's finding with respect to the existence of (or lack thereof) a joint venture is a factual determination that is reviewed under the clearly erroneous standard"); *USA Independence Mobilehome Sales, Inc., v. City of Lake City*, 908 So.2d 1151, 1158 (Fla. 1st DCA 2005) ("The existence of a joint venture presents a question of fact."); *see also Navarro v. Espino*, 316 So. 2d 646 (Fla. 3d DCA 1975) (same).

Further to this point, this Honorable Court (relying on the Eleventh Circuit) has previously held that the elements of joint venture could be inferred from the surrounding circumstances. *See Gentry v. Carnival Corp.*, 11-21580-CIV, 2011 WL 4737062 (S.D. Fla. 2011) (citing *Fulcher's Point Pride Seafood v. M/V "Theodora Maria"*, 935 F.2d 208, 212–13 (11th Cir. 1991)).

Therefore, the Plaintiff has presented sufficient facts – both in the contract as well as in his Complaint – to infer an intent between the parties such that the issue should be one for the jury to decide.  Thus, Carnival's Motion to Dismiss Count IV of the Complaint should be denied.

**VI. <u>Count V: The Complaint includes enough factual allegations from which it can be inferred that Carnival and the Excursion Entities intended to, and Carnival's argument as to the true intent of the parties involves questions of fact that are improper at this juncture of the case.</u>**

Similar to the Joint Venture claim, Carnival moves to dismiss Plaintiff's Third-Party Beneficiary claim on grounds that the Plaintiff fails to allege an intent by Carnival and the Excursion Entities to benefit the Plaintiff. [D.E. 19, pp. 16-18].

---

[10] The Plaintiff's Complaint alleges this arrangement between the parties (i.e., that the Excursion Entities operated the excursion, that Carnival determined the prices for the excursion, that Carnival collected payment from passengers, etc. [D.E. 1, ¶¶25, 51-61]).

Despite Carnival's argument, however, the Complaint does in fact allege an intent to benefit the Plaintiff, in the following paragraphs:

> Carnival and the Excursion Entities entered into a contract to provide excursions for passengers on board Carnival's ship(s).
>
> The contract between the parties clearly manifested the intent of the contracting parties that the contract primarily and directly benefit the third-party Plaintiff by *requiring the Excursion Entities to maintain insurance and/or exercise reasonable care in the operation of the subject shore excursion*.

[D.E. 1, ¶¶63-64] (emphasis added).

These facts, taken as true, are sufficient to infer an intent between the parties such that the issue should be one for the jury to decide. As in *Bridgewater v. Carnival Corp.*, No. 10-22241-CIV, 2011 WL 976467, at *2 (S.D. Fla. Mar. 2, 2011) this Honorable Court should therefore "decline to interpret the Agreement" between Carnival and the Excursion Entities.

To that point, further inquiry into the parties' intent is not appropriate at this pleading stage. The intent of the parties is the key to determining whether a third party is recognized as an *intended* beneficiary (with rights to enforce the contract) as opposed to only an *incidental* beneficiary (with no enforceable rights under the contract).[11]   Under Florida law, a third party is an intended beneficiary of a contract between two other parties only if a direct and primary object of the contracting parties was to confer a benefit on the third party. *See Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 982 (11th Cir. 2005); *see also Vencor Hosps. v. Blue Cross Blue Shield of R.I.*, 169 F.3d 677, 680 (11th Cir. 1999) ("A party has a cause of action as a third-party beneficiary to a contract if the contracting parties express an intent primarily and directly to benefit that third party (or a class of persons to which that third party belongs)."). If the contracting parties had no such purpose in mind, then any benefit from the contract reaped by the third party is merely "incidental,"

---

[11] Florida courts have recognized three types of third party beneficiaries to a contract: (1) donee beneficiaries; (2) creditor beneficiaries; and (3) incidental beneficiaries." *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 981 (11th Cir. 2005) (citing *Int'l Erectors, Inc. v. Wilhoit Steel Erectors & Rental Serv.*, 400 F.2d 465, 471 (5th Cir. 1968) (citation and internal quotation marks omitted). The key distinction is that the first two categories are classes of **"intended" beneficiaries**, who **have a right to sue for enforcement of the contract**, whereas the third category, "third party beneficiaries recognized as **incidental beneficiaries[,] have no enforceable rights under a contract**." *Id.* (emphasis added).

and the third party has no legally enforceable right in the subject matter of the contract. *Bochese*, 405 F. 3d at 982.

Thus, the test is whether the parties to the contract intended that a third person should benefit from the contract. *See Bochese*, 405 F. 3d at 981-82; *see also Marianna Lime Prods. Co. v. McKay*, 109 Fla. 275, 147 So. 264, 265 (1933) ("[T]he test is[ ] not that the promisee is liable to the third person, or that there is some privity between them or that some consideration moved from the third person, but that the parties to the contract intended that a third person should be benefited by the contract.").

To determine whether a contract was in fact intended for the benefit of a third person, the Eleventh Circuit stated:

> The Florida Supreme Court has explained that "[t]he question whether a contract was intended for the benefit of a third person is generally regarded as one of construction of the contract. **The intention of the parties in this respect is determined by the terms of the contract _as a whole_, construed in the light of the circumstances under which it was made and the apparent purpose that the parties are trying to accomplish.**"

*Bochese*, 405 F.3d at 982 (emphasis added); *see also Progress Rail Services Corp. v. Hillsborough Area Reg'l Transit Auth.*, 804CV200T23EAJ, 2006 WL 314507 at *1 (M.D. Fla. Feb. 9, 2006) ("For the purpose of determining whether a third-party is an intended beneficiary to a contract, basic contract interpretation rules apply.") (citing 28 Richard A. Lord Williston on Contracts § 70:226 (4th ed. 2005) ("Ascertaining whether the contracting parties intend to benefit a putative third-party beneficiary is a question of ordinary contract interpretation.")).

Therefore, because the intent of the parties is the key to determining whether a third party is an intended beneficiary under the contract, it is premature to rule on this issue at a motion to dismiss stage. *See BGW Design Limited, Inc.*, 2010 WL 5014298, *5 (S.D. Fla. 2010) (The [contractual] intent of the parties is a factual matter and therefore should not be resolved on a motion to dismiss); *American Honda Motor Co., Inc., v. Motorcycle Information Network, Inc.*, 390 F. Supp. 2d 1170, 1176 (S.D. Fla. 2005) ("The intent of the parties is a factual matter that cannot be resolved on a motion to dismiss); *see also Barnett v. Carnival Corp.*, 06-22521CIVOSULLIVAN, 2007 WL 1746900 (S.D. Fla. 2007) ("To determine the parties' intent as the defendant suggests necessarily would require the Court to look at matters outside of the complaint. As such, the issue of intent is not appropriate for resolution on a motion to dismiss.")

(citing *Westinghouse Electric Supply Co. v. Wesley Construction Co.*, 414 F.2d 1280, 1281-82 (5th Cir. 1969) (reversing the district court's order dismissing a third party beneficiary claim)).

Accordingly, Carnival's Motion to Dismiss Count V of the Plaintiff's Complaint should be denied.

**VII.**       **Motion for Leave to Amend**

Should this Honorable Court grant Carnival's motion or any portion thereof, the Plaintiff respectfully requests leave to amend.

**WHEREFORE**, for the foregoing reasons, the Plaintiff respectfully requests this Honorable Court enter an Order denying Carnival's Motion to Dismiss in its entirety, and any other relief this Court deems just and proper.[12]

                                   Respectfully submitted,

                                   LIPCON, MARGULIES,
                                   ALSINA & WINKLEMAN, P.A.
                                   *Attorneys for Plaintiff*
                                   One Biscayne Tower, Suite 1776
                                   2 South Biscayne Boulevard
                                   Miami, Florida 33131
                                   Telephone No.: (305) 373-3016
                                   Facsimile No.: (305) 373-6204

                             By: */s/ Jacqueline Garcell*
                                   **JASON R. MARGULIES**
                                   Florida Bar No. 57916
                                   jmargulies@lipcon.com
                                   **JACQUELINE GARCELL**
                                   Florida Bar No. 104358
                                   jgarcell@lipcon.com

---

[12] The undersigned counsel believed that this response was filed on December 17, 2015 (the due date). However, the undersigned counsel just realized that it was not filed due to an error and oversight. Carnival has been advised of this error, and the Plaintiff is filing the response on today's date without any objection from Carnival.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on December 21, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to electronically receive Notices of Electronic Filing.

By: */s/ Jacqueline Garcell*

**JACQUELINE GARCELL**

### <u>SERVICE LIST</u>
***Thompson v. Carnival Corp., et al.***
**Case No. 15-CV-24115-Moore/McAliley**

| | |
|---|---|
| **Jeffrey E. Foreman, Esq.** | **Jerry D. Hamilton, Esq.** |
| jforeman@fflegal.com | jhamilton@hamiltonmillerlaw.com |
| **Andrew D. Craven, Esq.** | **Carlos J. Chardon, Esq.** |
| acraven@fflegal.com | cchardon@hamiltonmillerlaw.com |
| **Lisandra Guerrero, Esq.** | **Samantha S. Loveland, Esq.** |
| lguerrero@fflegal.com | sloveland@hamiltonmillerlaw.com |
| Foreman Friedman, PA | Hamilton, Miller & Birthisel, LLP |
| One Biscayne Tower, Suite 2300 | 150 Southeast Second Avenue |
| 2 South Biscayne Boulevard | Suite 1200 |
| Miami, FL 33131 | Miami, Florida 33131 |
| Phone: 305-358-6555 | Telephone: 305-379-3686 |
| Fax: 305-374-9077 | Facsimile: 305-379-3690 |
| *Attorneys for Defendant, Carnival Corp.* | *Attorneys for Defendants, Delisle Walwyn & Co. Ltd.; Vacation And Tour Consultants (St. Kitts) Ltd. d/b/a Kantours a/k/a Kantours Destination Services* |