**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:15-cv-24115-KMM

TIMOTHY THOMPSON,

     Plaintiff,

v.

CARNIVAL CORPORATION d/b/a
CARNIVAL CRUISE LINES, *et al.*,

     Defendants.

_____/

## ORDER ON DEFENDANTS' MOTIONS TO DISMISS

This cause came before the Court upon Defendant Carnival Corporation's ("Carnival")

Motion to Dismiss Plaintiff's Complaint (ECF No. 19); and Defendants Delisle Walwyn & Co.

Ltd. ("Delisle Walwyn") and Vacation and Tour Consultants (St. Kitts) Ltd. d/b/a Kantours a/k/a

Kantours Destination Services ("Kantours") (collectively the "Excursion Entities") Motion to

Dismiss Plaintiff's Complaint (ECF No. 24) and related responses and replies.[1]  The Motions are

now ripe for review.  For the reasons set forth below, the Excursion Entities' Motion to Dismiss

(ECF No. 24) is GRANTED and Carnival's Motion to Dismiss (ECF No. 19) is GRANTED IN

PART.

## I.    BACKGROUND

This is a maritime personal injury action brought by Plaintiff Timothy Thompson

("Thompson") against Carnival and the Excursion Entities seeking recovery for damages

---

[1]  Thompson filed a Response to the Carnival Motion (ECF No. 28) and Carnival replied (ECF
No. 35).  Thompson also filed a Response to the Excursion Entities' Motion (ECF No. 31) and
those defendants replied (ECF No. 34).   The Excursion Entities also filed a notice of
supplemental authority (ECF No. 45) for the Court's consideration.

allegedly sustained by Thompson while participating in a shore excursion during a cruise aboard the Carnival *Valor*.  *See generally* Compl. (ECF No. 1).

The Complaint alleges that Thompson was a paying passenger aboard the Carnival *Valor* in early December, 2014.  *Id.* ¶ 13.  During the cruise, Carnival offered passengers aboard the ship the opportunity to go on various shore excursions, including one called the "ATV Adventure."  *Id.* ¶ 15.  Carnival advertised the excursions on its website, its promotional material, and at an excursion desk aboard the Carnival *Valor*.  *Id.* ¶¶ 14, 16.  Additionally, Carnival sold tickets for the shore excursions to its passengers, including Thompson, during the course of the subject cruise.  *Id.* ¶ 17.

On December 12, 2014, Thompson participated in the "ATV Adventure" in St. Kitts, which is alleged to be marketed and promoted by Carnival, and owned and operated by the Excursion Entities, two foreign corporations.[2]  *Id.* ¶¶ 19, 29.  While he was participating in the shore excursion, Thompson alleges that he suffered severe injuries when the brakes on the all-terrain vehicle ("ATV") that he was riding failed and/or malfunctioned.  *Id.* ¶ 21.

As a result, Thompson filed a five-count Complaint (the "Complaint") against Defendants on November 3, 2015, asserting the following claims against Carnival: Negligence (Count I), Negligence for Apparent Agency or Agency by Estoppel (Count III), Joint Venture (Count IV) and a Third-Party Beneficiary claim (Count V).  Thompson also brings a claim of negligence against the Excursion Entities (Count II).  Carnival now moves to dismiss Counts I, III, IV, and V of the Complaint for failure to state a claim, while the Excursion Entities argue that the Court lacks personal jurisdiction over the foreign corporations.

---

[2]  Defendant Kantours, a St. Kitts corporation, is the wholly-owned subsidiary of Defendant Delisle Walwyn & Co. Ltd., a private limited liability corporation registered in and existing under the laws of St. Kitts.  *See* Compl. ¶¶ 3, 4; *see also* Def.'s Mot. to Dismiss, Ex. A (ECF No. 24–1).

## II.     ANALYSIS

### A.     <u>Excursion Entities' Motion to Dismiss for Lack of Personal Jurisdiction</u>

In support of their motion to dismiss, the Excursion Entities argue that Thompson has failed to plead the minimum criteria necessary for the Court to exercise personal jurisdiction over them.  The Excursion Entities' main contention is that their limited contacts with this forum are constitutionally inadequate for purposes of establishing personal jurisdiction.  Thompson responds by arguing that: (1) the Excursion Entities expressly consented to jurisdiction in the Southern District of Florida in its agreement with Carnival[3]; (2) the Complaint alleges a sufficient basis for the Court to exercise general jurisdiction over the Excursion Entities; and (3) "[f]urther inquiry into the veracity of the statements made in the Excursion Entities' affidavit . . . requires jurisdictional discovery on the Excursion Entities' contacts with Florida."  *See* Pl.'s Resp. (ECF No. 31) at 2.  For the reasons that follow, the Court finds that it lacks personal jurisdiction over the Excursion Entities.

### 1.     <u>Applicable Law Governing Personal Jurisdiction</u>

"Because federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons . . . a federal court sitting in Florida must conduct a two-step inquiry to

---

[3]   This argument is a nonstarter.  Thompson is not a party to the shore excursion contract between Kantours and Carnival and thus cannot enforce the conferral of jurisdiction clause.  *See Meyer v. Carnival Corp*., 938 F. Supp. 2d 1251, 1256–57 (S.D. Fla. 2013) (finding that a "conferral of jurisdiction clause" contained within a "Standard Excursion Contract" was "not dispositive of the issue of personal jurisdiction" where plaintiff was "not a party to said contract").  Moreover, "a clause conferring personal jurisdiction may not be enforced unless independent grounds for personal jurisdiction exist under Florida's long-arm statute."  *Aronson v. Celebrity Cruises, Inc*., 30 F. Supp. 3d 1379, 1390 n.3 (S.D. Fla. 2014) (citing *Alexander Proudfoot Co. World Headquarters v. Thayer*, 877 F.2d 912, 918 (11th Cir. 1989)).  As discussed more fully in the remainder of this Order, the Court has no independent basis to assert jurisdiction over the Excursion Entities.

determine whether it has personal jurisdiction over a non-resident defendant." *Atmos Nation LLC v. Alibaba Grp. Holding Ltd.*, No. 0:15-CV-62104-KMM, 2016 WL 1028332, at *2 (S.D. Fla. Mar. 15, 2016) (citing *Daimler AG v. Bauman*, 134 S. Ct. 746, 753 (2014)). The first inquiry for a federal court, whether sitting in diversity or admiralty, is to look to the long-arm statue of the state—here Florida—and the cases interpreting that statute. *Tarasewicz v. Royal Caribbean Cruises Ltd.*, No. 14-CIV-60885, 2015 WL 3970546, at *18 (S.D. Fla. June 30, 2015). Second, the court must determine whether the exercise of personal jurisdiction "would violate the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013). Although "determining whether jurisdiction is appropriate under Florida's Long–Arm Statute is a separate inquiry from determining whether exercising personal jurisdiction comports with the Due Process Clause" it is clear that the constitutional requirements are "more restrictive." *Melgarejo v. Pycsa Panama, S.A.*, 537 F. App'x 852, 859 (11th Cir. 2013) (quoting *Internet Sols. Corp. v. Marshall*, 39 So. 3d 1201, 1207 (Fla. 2010)).

Pursuant to Florida's long-arm statute a non-resident defendant can be subject to personal jurisdiction in two ways. First, a Florida court can exercise general personal jurisdiction—that is, jurisdiction over any claims against a defendant, whether they involve the defendant's activities in Florida—if the defendant engages in "substantial and not isolated activity" in Florida. *Carmouche v. Tamborlee Mgmt., Inc*., 789 F.3d 1201, 1204 (11th Cir. 2015) (quoting Fla. Stat. § 48.193(2)). Second, a Florida court can exercise specific personal jurisdiction—that is, jurisdiction over suits that arise out of or relate to a defendant's contacts with Florida—if the claim asserted against the defendant arises from the defendant's contacts with Florida, and those

contacts fall within one of the enumerated categories set forth in section 48.193(1)(a). *Schulman v. Inst. for Shipboard Educ.*, 624 F. App'x 1002, 1004–05 (11th Cir. 2015).

Thompson only alleges that the Court has general jurisdiction over the Excursion Entities. With respect to general jurisdiction, Florida's long-arm statute is coextensive with the "limits on personal jurisdiction imposed by the Due Process Clause." *Fraser v. Smith*, 594 F.3d 842, 846 (11th Cir. 2010) (citing *Woods v. Nova Companies Belize Ltd.*, 739 So. 2d 617, 620 (Fla. 4th DCA 1999)). Due process "requires that the defendant have minimum contacts with the forum state and that the exercise of jurisdiction over the defendant does not offend 'traditional notions of fair play and substantial justice.'" *Mut. Serv. Ins. Co. v. Frit Indus., Inc.*, 358 F.3d 1312, 1319 (11th Cir. 2004) (*quoting Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). An exercise of general jurisdiction comports with due process when a defendant's contacts with Florida are "so 'continuous and systematic' as to render [the defendant] essentially at home in the forum state." *Daimler*, 134 S. Ct. at 754 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011)).

The burden lies with the plaintiff to establish a prima facie case of personal jurisdiction over a non-resident defendant. *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006). When a defendant submits affidavits contesting jurisdiction, the burden then shifts back to the plaintiff to produce evidence to support jurisdiction, unless "the defendant's affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction." *Louis Vuitton*, 736 F.3d at 1350. A court must construe all reasonable inferences in favor of the plaintiff when the parties have submitted conflicting evidence of jurisdiction. *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990). But, when the plaintiff offers no competent evidence to the contrary, "a district court may find that the defendant's unrebutted

denials [are] sufficient to negate plaintiff's jurisdictional allegations." *Zapata v. Royal Caribbean Cruises, Ltd.*, No. 12-21897-CIV, 2013 WL 1100028, at *2 (S.D. Fla. Mar. 15, 2013) (citing *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1280 (11th Cir. 2009)).

2.    <u>The Court Lacks General Jurisdiction over the Excursion Entities</u>

Because Thompson does not allege specific jurisdiction, the Court need only determine whether general jurisdiction exists over the Excursion Entities. Given recent decisions by the Supreme Court and the Eleventh Circuit the analysis of this issue practically ends before it begins.

Regarding general jurisdiction, the Supreme Court recently made a sweeping declaration "that only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." *Daimler*, 134 S. Ct. at 760 (citing *Goodyear*, 131 S. Ct. at 2851). In *Daimler*, the Court reinforced that there are two "paradigm bases" for asserting general jurisdiction over a corporation: its place of incorporation and its principal place of business. *Id.* at 759–60. The Court further determined that "a corporation's operations in a forum other than its formal place of incorporation or principal place of business" will be "so substantial and of such a nature as to render the corporation at home in that State" only in "exceptional" cases.[4] *Id.* at 761 n.19. Building off its decision in *Goodyear*, the Court rebuked the notion that a foreign

---

[4] The Court offered up its decision in *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437 (1952) as the "textbook case of general jurisdiction" that fit this rare exception. *Daimler*, 134 S. Ct. at 755 (quoting *Goodyear*, 131 S. Ct. at 2856). In *Perkins*, the defendant was a Philippine mining corporation, sued in Ohio, whose operations were disrupted by the Japanese occupation of the islands during World War II. *Perkins*, 342 U.S. at 447. As a result, the president and general manager of the mining company relocated to his home in Ohio to continue operating the business. *Id.* at 447–48. The Court found that it would not violate due process for Ohio to adjudicate the controversy based on the president's "continuous and systematic supervision of the necessarily limited wartime activities of the company" in Ohio. *Id.* at 448.

corporation could be subject to general jurisdiction in every state where it "engages in a substantial, continuous, and systematic course of business." *Daimler*, 134 S. Ct. 760–61.

There is no dispute that the Excursion Entities' place of incorporation and principal place of business lie in St. Kitts.  The question then is whether the Excursion Entities' contacts with Florida present the "exceptional" circumstance outlined in *Daimler* where the Excursion Entities could be deemed "at home" in Florida.  *Id*. at 761 n.19.  One need look no further than the Eleventh Circuit's recent opinion in *Carmouche* to answer this question in the negative.

*Carmouche* involved a claim brought by a cruise ship passenger who was injured during a shore excursion operated in Belize by a Panamanian-based corporation, Tamborlee.  *Id*. at 1202–03.  Accepting Plaintiff's allegations as true, the *Carmouche* panel determined that:

> Tamborlee's connections with Florida are limited to having a Florida bank account and two Florida addresses, one of which is a post-office box, purchasing insurance from Florida companies, filing a financing statement with the Florida Secretary of State, joining a non-profit trade organization based in Florida, and consenting to the jurisdiction of the Southern District of Florida for all lawsuits arising out of its agreements with Carnival.

*Id.* at 1204.  Relying on *Daimler*, the Eleventh Circuit held that "[t]hese connections are not 'so substantial' as to make this one those 'exceptional' cases in which a foreign corporation is 'at home' in a forum other than its place of incorporation or principal place of business."  *Id*. (quoting *Daimler*, 134 S. Ct. at 761 n.19).  The Eleventh Circuit further opined that "[a] foreign corporation cannot be subject to general jurisdiction in a forum unless the corporation's activities in the forum closely approximate the activities that ordinarily characterize a corporation's place of incorporation or principal place of business."  *Id.* at 1205.

Here, the Excursion Entities' connections to Florida are fewer than those found insufficient in *Carmouche*.  Accepting as true Thompson's allegations, the Excursion Entities' jurisdictional ties to Florida are: (1) contractual relationships with Carnival and other cruise

lines; (2) Florida bank accounts; (3) a relationship with the Florida Caribbean Cruise Association; (4) agreements to indemnify Carnival; and (5) a consent to jurisdiction in the Southern District of Florida for any lawsuit that Carnival is a party to concerning the shore excursion. In light of *Carmouche*, the Court would be hard-pressed to find that the Excursion Entities are "at home" in Florida based on these contacts.[5] *Daimler*, 134 S. Ct. at 761.

Even in the pre-*Daimler* and *Goodyear* era, the Eleventh Circuit found similar jurisdictional allegations insufficient to justify the exercise of general jurisdiction over a foreign tour operator. *See Fraser*, 594 F.3d at 847. The *Fraser* defendant, a Turks and Caicos commercial tour boat operator, possessed jurisdictional ties to Florida that consisted of: (1) specifically targeting the United States for advertising, including the Florida market; (2) numerous business relationships with companies based in the United States; (3) liability insurance purchased through a Florida insurance agent; (4) sending an employee to train on boat maintenance in Florida; and (5) the purchase of "about half its boats in Florida." *Id.* at 845. After considering the tour operator's Florida contacts in the aggregate, the Eleventh Circuit held that "the exercise of general personal jurisdiction over [the tour operator] under Florida's long-arm statute" was precluded by due process concerns.[6] *Id.* at 847.

---

[5] Even if this Court were to apply the logic in *Meyer*, 938 F. Supp. 2d at 1262, and impute Carnival's Florida activities to the Excursion Entities under an agency theory, the Excursion Entities' cumulative contacts as alleged still fall well below the threshold necessary to assert general jurisdiction. *See e.g. Aronson*, 30 F. Supp. 3d at 1390 n.4. Moreover, as discussed further, this Circuit's view of general jurisdiction through an agency lens is in doubt post-*Daimler*. *Id.* at 1390; *see also Daimler*, 134 S. Ct. at 759 n.13 (reasoning that although agency relationships are relevant to specific jurisdiction, "[i]t does not inevitably follow, however, that similar reasoning applies to *general* jurisdiction") (emphasis in original).

[6] Other courts have found more substantial contacts than the ones alleged here insufficient for jurisdictional purposes. *See Aronson*, 30 F. Supp. 3d at 1389; *Zapata*, 2013 WL 1100028, at *4.

The fact that Thompson's counsel devotes six pages of its response brief to the personal jurisdiction analysis—yet fails to cite to either *Daimler* or *Carmouche*—is inexplicable and borderline malpractice.   The cases on which Thompson relies to suggest a more flexible approach to general jurisdiction are each more than a decade old, easily distinguishable, and do not comport with the cabined conception of general jurisdiction that now exists post-*Daimler*.

Specifically, Thompson relies on the Eleventh Circuit's decision in *Stubbs* to argue that Carnival's extensive Florida contacts can be imputed to the Excursion Entities by virtue of their agency relationship.   *Stubbs*, 447 F.3d at 1361.   This is a tendentious gloss on precedent that has been previously rejected by another court in this District.   In *Lapidus*, Judge Seitz held that plaintiff's argument for specific jurisdiction was unfounded because,

> Plaintiff's assertion that the Excursion Entities' role as NCL's subsidiary establishes jurisdiction over the Excursion Entities misinterprets *Stubbs v. Wyndham Nassau Resort and Crystal Palace Casino*, 447 F.3d 1357 (11th Cir. 2006) and *Mei[e]r v. Sun Int'l Hotels*, Ltd., 288 F.3d 1264 (11th Cir. 2002).   In those cases, the Eleventh Circuit held that a Florida subsidiary acting merely as an agent of a non-resident parent company can subject the non-resident parent company to the Court's jurisdiction based on the subsidiary's contacts with Florida.   By contrast here, Plaintiff seeks to subject the non-resident subsidiary [Excursion Entities] to jurisdiction based on the parent company's [NCL] contacts with Florida.

*Lapidus v. NCL Am. LLC,* No. 12-21183-CIV, 2013 WL 646185, at *5 (S.D. Fla. Feb. 14, 2013). Moreover, reliance on this line of cases to establish general jurisdiction on an agency theory is dubious given the decisions in *Daimler* and *Goodyear*.   *Daimler*, 134 S. Ct. at 760 (rejecting Ninth Circuit's agency theory, finding that it "appears to subject foreign corporations to general jurisdiction whenever they have an in-state subsidiary or affiliate, an outcome that would sweep beyond even the 'sprawling view of general jurisdiction' . . . rejected in *Goodyear*") (quoting *Goodyear*, 131 S. Ct. at 2856); *see also Daimler*, 134 S. Ct. at 773 (Sotomayor, J., concurring in judgment) (questioning the vitality of *Meier* in wake of majority decision); *Twinstar Partners,*

*LLC v. Diamond Aircraft Indus., Inc.*, No. 11-61684-CIV, 2014 WL 4102260, at \*5 (S.D. Fla. Aug. 18, 2014) (reasoning that the relationship between a Florida-based corporation and a foreign corporation for which the Florida entity allegedly served as a "sales conduit" was not "sufficient in light of *Daimler* and *Goodyear* to establish general jurisdiction on an agency theory").

This dramatic change[7] in the personal jurisdiction landscape was not lost on another court in this District when faced with similar jurisdictional issues involving a foreign tour operator. *See Aronson*, 30 F. Supp. 3d at 1390 ("With *Meier* and its progeny in doubt, this Court is not inclined to confer general jurisdiction over [excursion operator] particularly where, as here, [excursion operator's] contacts with Florida are more attenuated than the contacts deemed inadequate in *Daimler*."). This Court is equally unconvinced that it could exercise general jurisdiction over the Excursion Entities given this constricted framework. Post-*Daimler*, the arguments proffered by Thompson's counsel are simply "runnin' against the wind."[8]

3. The Court Cannot Exercise Jurisdiction Pursuant to Federal Rule of Civil Procedure 4(k)(2).

In a last-ditch effort, Thompson alternatively asserts that the Court possesses jurisdiction over the Excursion Entities pursuant to Federal Rule of Civil Procedure 4(k)(2). Rule 4(k)(2)—the so-called federal long-arm statute—permits a federal court to aggregate a foreign defendant's

---

[7] *See Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014) (recognizing that under *Daimler* "[i]t is . . . incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business"); *see also* Alan M. Trammell, *A Tale of Two Jurisdictions*, 68 Vand. L. Rev. 501, 521 (2015) ("The Court has left open only the slimmest possibility that general jurisdiction might be permissible in a state that is the functional equivalent of one of th[e] paradigm examples. While such an exception is theoretically possible, the Court suggests that it will be the rarest of rarities.").

[8] Bob Seger & The Silver Bullet Band, *Against the Wind*, *on* Against the Wind (Capitol Records 1980).

nationwide contacts to allow for personal jurisdiction provided that two essential conditions are met: "(1) plaintiff's claims must arise under federal law; and (2) the exercise of jurisdiction must be consistent with the Constitution and laws of the United States." *Fraser*, 594 F.3d at 848–49 (internal quotation marks omitted). "The exercise of personal jurisdiction comports with due process if the non-resident defendant has established 'certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1220 (11th Cir. 2009) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). For purposes of Rule 4(k)(2), the applicable forum for the minimum contacts analysis is the United States as a whole. *Id.*

Since Thompson's maritime tort claims arise under federal law, *see Fraser*, 594 F.3d at 849, the Court must determine whether the exercise of federal jurisdiction over the Excursion Entities would comport with the Fifth Amendment's Due Process Clause. Because "the language and policy considerations of the Due Process Clauses of the Fifth and Fourteenth Amendments are virtually identical, decisions interpreting the Fourteenth Amendment's Due Process Clause guide us in determining what due process requires in the Fifth Amendment jurisdictional context." *Oldfield*, 558 F.3d at 1219 n.25; *see also Fraser*, 594 F.3d at 849.

Rule 4(k)(2) was implemented to fill a lacuna in "the enforcement of federal law in international cases." *Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008) (citing Fed. R. Civ. P. 4(k) advisory committee's notes to 1993 amendments). Yet, it is a rare occurrence when a court invokes jurisdiction under the rule. The Ninth Circuit aptly elucidated the infrequent employment of Rule 4(k)(2) as a basis for jurisdiction in 2007. *See Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 462 (9th Cir. 2007) ("Indeed, in the fourteen

years since Rule 4(k)(2) was enacted, none of our cases has countenanced jurisdiction under the rule."). In affirming the district court's dismissal for lack of personal jurisdiction, the Ninth Circuit noted that "[t]he few cases in which our sister circuits have concluded that Rule 4(k)(2) conferred jurisdiction have involved defendants with much more extensive contacts to this country." *Id.* (citing *Mwani v. bin Laden*, 417 F.3d 1, 13 (D.C. Cir. 2005)).

For example, in *Mwani*, the D.C. Circuit held that Osama bin Laden and al Qaeda fell within the jurisdictional confines of Rule 4(k)(2) because they "engaged in unabashedly malignant actions directed at [and] felt in this forum." *Mwani*, 417 F.3d at 13. The defendants' nationwide contacts included ongoing conspiracies to attack the United States and efforts to "bomb the United Nations, Federal Plaza, and the Lincoln and Holland Tunnels in New York." *Id.* Similarly, the Fifth Circuit affirmed the application of Rule 4(k)(2) when it found the aggregate national contacts of an insurer "extensive." *Adams v. Unione Mediterranea Di Sicurta*, 364 F.3d 646, 651 (5th Cir. 2004). There, the record indicated that the defendant insurer had (1) "paid claims to numerous U.S. companies;" (2) "insured hundreds of shipments to the United States;" and (3) "paid a number of individuals in the United States as claims adjusters, surveyors, investigators and other representatives to enable it to conduct business in this country." *Id.*

This is not one of those uncommon cases. The Excursion Entities' contacts with the United States as a whole are simply too attenuated to support jurisdiction under Rule 4(k)(2). Turning back to *Fraser*, the Eleventh Circuit determined that the tour boat operator's nationwide contacts "were no more continuous and systematic than the company's activities in Florida." *Fraser*, 594 F.3d at 849. As a result, the Court held that exercising general jurisdiction over the foreign-based corporation under Rule 4(k)(2) would offend due process. *Id.* at 850 (reasoning

that if the tour boat operator was "subject to general personal jurisdiction under Rule 4(k)(2)" it would necessarily "imply that the company is amenable to suit everywhere in the United States on any claim arising under federal law").

Selling excursion tickets in the United States through Carnival's website can be readily identified as an "ordinary business activit[y]" that the Eleventh Circuit has determined is "far from atypical for foreign corporations" and insufficient to warrant exercising general jurisdiction under Rule 4(k)(2). *Schulman*, 624 F. App'x at 1006; *see also Fraser*, 594 F.3d at 850; *Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1294 (11th Cir. 2000). It is certainly not a connection to the United States that is "so substantial and of such a nature" as to make this one of those "exceptional" cases in which a foreign corporation is "at home" in a forum other than its place of incorporation or principal place of business.[9] *Daimler*, 134 S. Ct. at 761 n.19.

4.   Plaintiff is Not Entitled to Jurisdictional Discovery

Despite not submitting any evidence or affidavits supporting his jurisdictional allegations, Thompson contends he is entitled to jurisdictional discovery to test "the veracity of the statements made in the Excursion Entities' affidavit." Pl.'s Resp. (ECF No. 31) at 10. However, Thompson's request is procedurally improper. *See United Techs.*, 556 F.3d at 1280–81 (denying jurisdictional discovery where "plaintiff never formally moved the district court for jurisdictional discovery, but, instead, buried such requests in its briefs as a proposed alternative

---

[9]   In the wake of the Supreme Court's decision in *Daimler*, it appears unlikely that general jurisdiction over a foreign defendant could ever be available under 4(k)(2). In *Daimler*, the Supreme Court rejected as "unacceptably grasping" the notion that foreign corporations are subject to general jurisdiction even if they engage in a "substantial, continuous, and systematic course of business" in a given forum. *Id*. at 761–63. Applying this rationale to cases involving maritime defendants, like the Excursion Entities and other foreign-based tour operators, these recent legal developments undoubtedly "raise some large looming questions about the efficacy of general jurisdiction under Rule 4(k)(2)." Laura Beck Knoll, *Personal Jurisdiction over Maritime Defendants: Daimler, Walden, and Rule 4(k)(2)*, 40 Tul. Mar. L.J. 103, 133 (2015).

to dismissing defendant on the state of the current record").  Even if he had properly requested jurisdictional discovery, there exists "no genuine dispute on a material jurisdictional fact to warrant jurisdictional discovery."  *Peruyero v. Airbus S.A.S.*, 83 F. Supp. 3d 1283, 1290 (S.D. Fla. 2014); *see also Yepez v. Regent Seven Seas Cruises,* No. 10-23920-CIV, 2011 WL 3439943, at *1 (S.D. Fla. Aug. 5, 2011) ("[T]he failure of a plaintiff to investigate jurisdictional issues prior to filing suit does not give rise to a genuine jurisdictional dispute.").  Accordingly, Thompson is foreclosed from pursuing jurisdictional discovery in an attempt to marshal facts that he "should have had—but did not—before coming through the courthouse doors." *Lowery v. Alabama Power Co*., 483 F.3d 1184, 1216 (11th Cir. 2007).

**B.**   **Carnival's Motion to Dismiss for Failure to State a Claim**

Carnival has also filed a motion to dismiss pursuant to Rule 12(b)(6).  In response, Thompson asserts that each of the four counts against Carnival have been sufficiently pleaded. The Court will address each count in turn.

**1.**   Legal Standard

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).  The purpose of this requirement is "to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555.  When considering a motion to dismiss, the court must accept all of the plaintiff's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell,* 516 F.3d 1282, 1284 (11th Cir. 2008).

A complaint must also contain enough facts to indicate the presence of the required elements. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1302 (11th Cir. 2007).  However, "[a] pleading that offers 'a formulaic recitation of elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  "[C]onclusory allegations, unwarranted deductions of fact or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).

### 2.   Plaintiff's Negligence Claim Against Carnival

To state a negligence claim, "a plaintiff must allege that (1) the defendant had a duty to protect the plaintiff from a particular injury; (2) the defendant breached that duty; (3) the breach actually and proximately caused the plaintiff's injury; and (4) the plaintiff suffered actual harm." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012).  "In a claim based on an alleged tort occurring at an offshore location during the course of a cruise, federal maritime law applies, just as it would for torts occurring on ships sailing in navigable waters." *Aronson*, 30 F. Supp. 3d at 1392.

It is well established that a cruise ship operator owes its passengers "the duty of exercising reasonable care under the circumstances of each case." *Lugo v. Carnival Corp.*, No. 1:15-CV-21319-KMM, 2015 WL 9583280, at *3 (S.D. Fla. Dec. 31, 2015); *see also Torres v. Carnival Corp.*, No. 14-13721, 2015 WL 7351676, at *5 (11th Cir. Nov. 20, 2015) (citing *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 632 (1959)).  This standard of care "requires, as a prerequisite to imposing liability, that the carrier have had actual or constructive notice of the risk-creating condition, at least where . . . the menace is one commonly encountered on land and not clearly linked to nautical adventure." *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1322 (11th Cir. 1989).

15

Once the passenger leaves the ship, a cruise ship operator "only owes its passengers a duty to warn of known dangers in places where passengers are invited or reasonably expected to visit." *Moseley v. Carnival Corp.*, No. 13-20416-CIV, 2013 WL 5913833, at *3 (S.D. Fla. Oct. 31, 2013) (citing *Carlisle v. Ulysses Line Ltd., S.A.*, 475 So. 2d 248, 251 (Fla. 3d DCA 1985)); *see also Chaparro*, 693 F.3d at 1336 (recognizing that the rule from *Carlisle* is "consonant with the federal maritime standard of 'ordinary reasonable care under the circumstances'"); *Aronson*, 30 F. Supp. 3d at 1395 ("Thus, where cruise ship passengers are invitees or expected visitors at offshore locations, a ship operator's duty of care is limited to the duty to warn.").

Carnival argues that the vast majority of Thompson's negligence claims—some twenty-five alleged breaches of duty—are premised on duties not recognized under general maritime law. *See* Compl. ¶ 32(a)–(y). For example, Thompson alleges that Carnival failed to: (1) "provide a safe excursion," *id.* ¶ 32(a); (2) adequately inspect and/or monitor the excursion, *id.* ¶¶ 32(b), (e), (h); (3) "regularly and adequately inspect and/or maintain the ATVs used for the subject shore excursion," *id.* ¶ 32(d); and (4) adequately instruct passengers on how to operate ATVs and require the Excursion Entities to do so, *id.* ¶¶ 32(o), (p). Thompson, on the other hand, contends that the aforementioned allegations—and others of a similar nature—merely illustrate "the specific ways in which Carnival breached the duty of reasonable care owed to" him. Pl.'s Resp. (ECF No. 28) at 7.

Carnival also argues that Thompson's negligence claim is defective in two other respects. First, Carnival argues that Thompson has failed to allege a sufficient factual basis for a failure to warn claim. Second, Carnival asserts that Thompson has failed to plead a prima facie case for negligent selection and retention. Thompson responds to these contentions by arguing that he has pleaded sufficient factual allegations to support his failure to warn claim and the allegations

16

concerning the claim against Carnival for negligent selection and/or retention give Carnival fair notice of what the claim is.

After reviewing the Complaint and the arguments offered by both parties, it is evident that Thompson's Complaint rests on "'naked assertion[s]' devoid of 'further factual enhancement.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)).  In fact, a close analysis of the Complaint reveals it to be the embodiment of a "form complaint that could be used by any passenger who was injured during any excursion, while on a cruise" that another court has found glaringly deficient.[10]  *Zapata*, 2013 WL 1296298, at *2.  To be clear, the Complaint does provide factual allegations of Thompson's injury.  Compl. ¶ 21.  However, the remainder of the Complaint is bereft of supporting facts and resembles the sort of "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" that Rule 8 seeks to prevent.  *Iqbal*, 556 U.S. at 678; *see also Harding v. NCL (Bahamas) Ltd.*, 90 F. Supp. 3d 1305, 1308 (S.D. Fla. 2015).

For example, the allegations that Carnival failed to warn of the dangers present in the shore excursion are conclusory and lack any factual support.  To premise a negligence claim on a breach of the duty to warn, Thompson must set forth factual allegations "showing that the cruise line knew or should have known of any dangerous condition relating to the . . . excursion that would give rise to a duty to warn."  *Gayou v. Celebrity Cruises, Inc.*, No. 11-23359-CIV, 2012 WL 2049431, at *5 (S.D. Fla. June 5, 2012); *see also Koens v. Royal Caribbean Cruises, Ltd.*, 774 F. Supp. 2d 1215, 1220 (S.D. Fla. 2011).  Thompson has not done so here.

---

[10]   The Court is concerned that advocacy in maritime tort cases has come to resemble an automotive assembly line.  Like automotive manufacturers mass producing one vehicle after another, attorneys are churning out seemingly identical complaints.  A complaint of this nature is more jalopy than Jaguar.

Instead, Thompson broadly alleges that "Carnival knew of the foregoing conditions causing the subject incident and did not correct them, or the conditions existed for a sufficient length of time so that Carnival, in the exercise of reasonable care under the circumstances, should have learned of them and corrected them."  Compl. ¶ 34.  This mere "recitation of the elements of a cause of action" will not suffice under Rule 8's pleading standards.  *Twombly*, 550 U.S. at 555; *see also Rojas v. Carnival Corp.*, 93 F. Supp. 3d 1305, 1309 (S.D. Fla. 2015) (dismissing failure to warn claim "[b]ecause Plaintiffs fail to allege sufficient factual matter to state a negligence claim based on Defendant's duty to warn"); *Richards v. Carnival Corp.*, No. 14-23212-CIV, 2015 WL 1810622, at *3 (S.D. Fla. Apr. 21, 2015) (dismissing negligence claim against Carnival where plaintiff "failed to provide a sufficient factual basis that demonstrates that Carnival knew or should have known that the ATV excursion was not safe.  Plaintiff alleges a myriad of breaches; however, [plaintiff] has not pleaded facts that have adequately triggered Carnival's duty to warn").

Equally deficient is Thompson's speculative allegation that he "anticipates that discovery will reveal that, prior to the Plaintiff's incident, other cruise ship passengers were also injured participating in the same shore excursion."  Compl. ¶ 34.  Without factual support, this allegation is insufficient to survive dismissal.  *Iqbal*, 556 U.S. at 678-79 ("Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."); *Belik v. Carlson Travel Grp., Inc.*, 864 F. Supp. 2d 1302, 1314 (S.D. Fla. 2011) ("Plaintiff's attempt to reverse the logical sequence in litigation—claim first, discovery later—is unavailing."); *see also Lazarre v. JPMorgan Chase Bank, N.A.*, 780 F. Supp. 2d 1320, 1329 n.16 (S.D. Fla. 2011) (noting that discovery under the Federal Rules of Civil Procedure "is intended to narrow the scope of the issues and prevent surprise at trial; it is not intended to allow a plaintiff to go on a fishing

expedition to see if the speculative complaint that he filed has any basis in fact") (internal quotation omitted).

To the extent that the Complaint asserts a claim for negligent hiring and retention of an independent contractor, that claim also lacks the requisite factual allegations necessary to survive dismissal. To adequately plead such a claim, Thompson must allege that the excursion operator "was incompetent or unfit to perform the work, that [Carnival] knew or reasonably should have known of the particular incompetence or unfitness, and that such incompetence or unfitness proximately caused his injuries." *Gayou*, 2012 WL 2049431, at *5. Thompson's Complaint is materially wanting in relevant facts to sustain this claim. *Id.* (holding that plaintiff had "not sufficiently alleged a negligent hiring or retention claim" when the operative complaint was not "supported by any relevant facts"); *see also Zapata*, 2013 WL 1296298, at *4 (dismissing negligent hiring or retention claim where complaint did "not provide any facts to support the allegation that [cruise line] knew or should have known that the . . . excursion was unsafe").

The Court now turns to the issue of whether Thompson is attempting to impose heightened duties of care on Carnival that are inconsistent with general maritime law. This issue has been bandied about the Southern District of Florida over the past several years. Some courts have opted not to dismiss claims beyond the duty to warn in "line-item fashion." *Pucci v. Carnival Corp.,* No. 15-22241-CIV, 2015 WL 7272764, at *3 (S.D. Fla. Nov. 18, 2015); *Gayou*, 2012 WL 2049431, at *6 (citing *Holguin v. Celebrity Cruises, Inc*., No. 10-20215-CIV, 2010 WL 1837808, at *1 (S.D. Fla. May 4, 2010)); *McLaren v. Celebrity Cruises, Inc*., 2012 WL 1792632, at *5 (S.D. Fla. May 16, 2012). Others have struck attempts to impose heightened duties beyond the duty to warn of known dangers in known settings. *Moseley v. Carnival Corp*., No. 13-20416-CIV, 2013 WL 5913833, at *3 (S.D. Fla. Oct. 31, 2013); *Joseph v. Carnival*

*Corp.*, No. 11-20221-CIV, 2011 WL 3022555, at *3 (S.D. Fla. July 22, 2011); *Koens*, 774 F.

Supp. 2d at 1220.  The Court finds the latter the more prudent approach to take here.  Otherwise,

the imposition of heightened duties would effectively render cruise line operators like Carnival

the all-purpose insurers of their passengers' safety.  *Kornberg v. Carnival Cruise Lines, Inc.,* 741

F.2d 1332, 1334 (11th Cir. 1984); *Weiner v. Carnival Cruise Lines*, No. 11-CV-22516, 2012 WL

5199604, at *2 (S.D. Fla. Oct. 22, 2012); *Joseph*, 2011 WL 3022555, at *2 ("A cruise ship

owner or operator . . . is not an insurer of its passengers' safety.").  Thompson's negligence count

is therefore dismissed without prejudice.

### 3.   Plaintiff's Apparent Agency/Agency by Estoppel Claim Against Carnival

Count III of the Complaint alleges that Carnival is liable for the negligence of the

Excursion Entities under a theory of apparent agency or agency by estoppel.  As an initial matter,

apparent agency and agency by estoppel are not independent causes of action, but instead

different theories of negligence liability.  *See Barabe v. Apax Partners Europe Managers, Ltd.*,

359 F. App'x 82, 84 (11th Cir. 2009); *see also Franza v. Royal Caribbean Cruises, Ltd.*, 772

F.3d 1225, 1249 (11th Cir. 2014) ("Plainly, actual agency and apparent agency are distinct

theories of liability.").  "Thus, to hold a principal liable for the negligence of an apparent agent, a

plaintiff must sufficiently allege the elements of apparent agency in addition to the elements of

the underlying negligent act of the agent for which the plaintiff seeks to hold the principal

liable."  *Rojas*, 93 F. Supp. 3d at 1311.

In order to state a claim of apparent agency[11], a plaintiff must allege that: "1) the alleged

principal makes some sort of manifestation causing a third party to believe that the alleged agent

---

[11]   "In Florida, agency by estoppel is nearly the same as apparent agency."  *Belik*, 864 F. Supp.
2d at 1312.  Accordingly, courts of the Eleventh Circuit do not consider the two theories

had authority to act for the benefit of the principal; 2) that such belief was reasonable; and 3) that the claimant reasonably acted on such belief to his or her detriment." *Aronson*, 30 F. Supp. 3d at 1396 (citing *Doonan v. Carnival Corp.*, 404 F. Supp. 2d 1367, 1371 (S.D. Fla. 2005)).

Carnival argues that Thompson's claim that Carnival is liable for negligence based on the Excursion Entities' alleged role as Carnival's apparent agent must fail for two independent reasons. First, Carnival asserts that Thompson's lack of factual allegations of negligence warrant dismissal of the claim. Second, Carnival insists that the Passenger Ticket Contract ("Ticket Contract") forecloses Thompson from pleading that he reasonably believed that Carnival and the Excursion Entities were engaged in an agency relationship. Thompson counters by arguing that the Ticket Contract is beyond the four corners of the Complaint and that the reasonableness of his belief that the Excursion Entities were Carnival's agents is a question of fact.

The Court need not turn to the Ticket Contract to see that Thompson has failed to state a claim for apparent agency. As was the case with Thompson's negligence claim against Carnival, there is a dearth of facts to support the underlying negligence claim against the Excursion Entities. While Thompson lists numerous ways that the Excursion Entities violated the reasonable standard of care, there are no factual allegations linking those alleged failures to his injury, and thus this apparent agency claim cannot stand. *See Flaherty v. Royal Caribbean Cruises, Ltd.*, No. 15-22295, 2015 WL 8227674, at *6 (S.D. Fla. Dec. 7, 2015) (dismissing apparent agency claim because "[t]here are no facts" in operative complaint "which demonstrate what proximately caused Plaintiff's injuries"); *Rojas*, 93 F. Supp. 3d at 1311; *Zapata*, 2013 WL 1296298, at *5 (dismissing apparent agency claim where plaintiff failed to sufficiently allege facts of an underlying negligence claim). Accordingly, Count III is dismissed without prejudice.

---

separately. *Whetstone Candy Co. v. Kraft Foods, Inc.*, 351 F.3d 1067, 1078 n.15 (11th Cir. 2003).

4.      Plaintiff's Joint Venture Claim

Although there is no cause of action for joint venture, *Ash*, 2014 WL 6682514, at *8, it is clear from a review of the Complaint that Thompson is once again advancing an alternative theory for negligence liability in Count IV.   Carnival argues that Thompson's joint venture theory of liability must be dismissed because the Tour Operator Agreement ("Agreement") (ECF No. 19–4) between Carnival and the Excursion Entities expressly states that the parties are not joint venturers.   As a result, Carnival asserts that Thompson has no factual basis on which to plead intent.   Thompson again responds that the Agreement is beyond the four corners of the Complaint and thus should not be considered by the Court at this stage of the litigation. Alternatively, Thompson argues that the contractual provisions of the Agreement "create a question of fact for the jury to determine whether or not the parties intended to form a joint venture." *See* Pl.'s. Resp. (ECF No. 28) at 23.

A joint venture theory of negligence liability requires a plaintiff to plead the following five elements: "(1) a community of interest in the performance of a common purpose; (2) joint control or right of control; (3) a joint proprietary interest in the subject matter; (4) a right to share in the profits; and (5) a duty to share in any losses which may be sustained." *Fojtasek v. NCL (Bahamas) Ltd.*, 613 F. Supp. 2d 1351, 1357 (S.D. Fla. 2009).

Putting aside the Agreement, a review of the Complaint highlights that Thompson has not sufficiently alleged that Carnival and the Excursion Entities were engaged in a joint venture.   On the element of intent, the Complaint alleges that Carnival and the Excursion Entities entered into an agreement where Carnival would sell the excursion to its passengers and the Excursion Entities would operate it.   Compl. ¶ 52.   At this stage, this allegation of intent is adequately pled. *See  Aronson*, 30 F. Supp. 3d at 1398.   However, Plaintiff has alleged in a conclusory manner

22

that Carnival and the Excursion Entities shared profits and losses.  Compl. ¶ 58.  The remaining elements of joint venture are sufficient to state a claim for relief if Thompson can cure the deficiencies in this Count in addition to adequately re-pleading the negligence claim (Count I).  *See Lapidus v. NCL Am. LLC*, No. 12-21183-CIV, 2012 WL 2193055, at *6 (S.D. Fla. June 14, 2012).  Accordingly, Count IV is dismissed without prejudice.

### 5.    Plaintiff's Third Party Beneficiary Claim (Count V)

Count V alleges that Thompson was a third-party beneficiary of an agreement between Carnival and the Excursion Entities.  Carnival argues that Thompson has failed to sufficiently plead the required elements of the claim—namely intent—and thus the claim fails as a matter of law.

The elements of claim for breach of a third-party beneficiary contract are as follows:

> (1) the existence of a contract to which Plaintiff is not a party; (2) an intent, either expressed by the parties, or in the provisions of the contract, that the contract primarily and directly benefit Plaintiff; (3) breach of that contract by one of the parties; and (4) damages to Plaintiff resulting from the breach.

*Aronson*, 30 F. Supp. 3d at 1398 (citation omitted).  In order for a third-party to have a legally enforceable right under the contract, the benefit to the third-party must be the "direct and primary object of the contracting parties."  *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 982 (11th Cir. 2005); *see also Wolf v. Celebrity Cruises, Inc*., 101 F. Supp. 3d 1298, 1311 (S.D. Fla. 2015).  Put another way, "[t]he contracting parties' intent to benefit the third party must be mutual, specific, and clearly expressed in order to endow a third-party beneficiary with a legally enforceable right."  *Hawaiian Airlines, Inc. v. AAR Aircraft Servs., Inc*., No. 1:14-CV-20560-KMM, 2016 WL 867116, at *5 (S.D. Fla. Mar. 7, 2016); *see also Aronson*, 30 F. Supp. 3d at 1398 (noting that an "'incidental or consequential benefit' to a third party is insufficient to state a claim").

Thompson alleges that Carnival and the Excursion Entities entered into a contract that "primarily and directly benefit[s]" him "by requiring the Excursion Entities to maintain insurance and/or exercise reasonable care in the operation of the subject shore excursion." Compl. ¶ 21.  These exact or similar allegations have been asserted by Thompson's counsel on several previous occasions and all have been soundly rejected.  *See Finkelstein v. Carnival Corporation*, 1:14-cv-24005-UU (S.D. Fla. Jan. 20, 2015); *Ash*, 2014 WL 6682514, at *10; *Aronson*, 30 F. Supp. 3d at 1398.  Undeterred by these previous failures—and perhaps embracing the spirit of Shakespeare—Thompson's counsel charges "[o]nce more unto the breach, dear friends, once more."  William Shakespeare, *King Henry the Fifth*, Act III, Sc. 1, 1.1 (1600).  Like those previous outcomes, Thompson's third-party beneficiary claim fails here as the allegations in the Complaint fail to nudge the claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 547.

Accordingly, Count V is dismissed without prejudice because it fails to plead factual allegations that "raise a right to relief above the speculative level."  *Id.* at 555.

## III.   CONCLUSION

For the foregoing reasons, it is ORDERED AND ADJUDGED that

1.      Defendants Delisle Walwyn & Co. Ltd. ("Delisle Walwyn") and Vacation and Tour Consultants (St. Kitts) Ltd. d/b/a Kantours a/k/a Kantours Destination Services ("Kantours") (collectively, the "Excursion Entities") Motion to Dismiss (ECF No. 24) is GRANTED.

2.      Plaintiff's Complaint (ECF No. 1) as against the Excursion Entities is DISMISSED WITH PREJUDICE.  The Clerk of Court shall terminate those defendants from this case.

      3.     Defendant Carnival's Motion to Dismiss (ECF No. 19) is GRANTED IN PART. Counts I, III, IV, and V are DISMISSED WITHOUT PREJUDICE with leave to re-plead.

      4.     Plaintiff shall file an Amended Complaint within ten days of the date of this Order.

      DONE AND ORDERED in Chambers at Miami, Florida, this 30th day of March, 2016.


_____

K. MICHAEL MOORE
CHIEF UNITED STATES DISTRICT JUDGE

c:     All counsel of record